MATTHEW M. FEELY, Respondent, *v.* VITAGRAPH COMPANY OF AMERICA, Appellant.

Second Department, October 25, 1918.

**Libel — pleading — complaint — article charging unlawful pilfering of films but not mentioning plaintiff by name — innuendo.**

Where a complaint in an action for libel alleges that the plaintiff is a man of good reputation, lawfully engaged in the business of selling motion pictures and rights to exhibit the same; that during the time in question he was the owner of " certain rights to exhibit a certain motion picture film called ' The Feudists,' and was authorized to sell and vend same; " that the defendant published " of and concerning the plaintiff " in certain moving picture journals articles which stated in substance that persons engaged in the unlawful practice of stealing and selling films without authority of the real owners were at large, and that the defendant's president purposes to apprehend the criminals and fling them into jail, and that " The Feudists " is one of the pilfered films, but such article nowhere mentions the plaintiff by name, and the innuendo consists of the mere statement that the plaintiff was the person referred to, without averment of extrinsic facts, there is a failure to state a cause of action.

APPEAL by the defendant, Vitagraph Company of America, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 24th day of July, 1918, overruling defendant's demurrer to the amended complaint.

*William M. Seabury* [*Mathias L. Connes* with him on the brief], for the appellant.

*Solomon Goodman,* for the respondent.

KELLY, J.:

The action is for libel, and the defendant demurs to the amended complaint upon the ground that it fails to state facts constituting a cause of action against the defendant. The defendant argues that it appears on the face of the complaint that the alleged libels therein set forth do not refer to the plaintiff, and that the plaintiff's pleading shows that they could not refer to the plaintiff. It is true that plaintiff alleges that the matter complained of and set forth

in the complaint was published of and concerning him (Code Civ. Proc. § 535), and by innuendo avers that the offensive words in the libels referred to *him* and charged *him* with crime and dishonesty. But the plaintiff was not named in either of the articles complained of. In appropriating to himself the charges of crime contained in the articles pleaded, the innuendo consists of his bald statement that he was the person referred to, without averment of extrinsic facts. " It is ·not the office of the innuendo to graft a meaning upon or enlarge the matter set forth, but to explain the application of the words used." (*O'Connell* v. *Press Publishing Co.*, 214 N. Y. 352.) " The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. ' An innuendo cannot make the person certain which was incertain before.' (4 Rep. 17b.) So if the words reflect impartially on either A. or B., or on some one of a certain number or class, and there is nothing to show which one was meant, no one can sue. Where the words reflect on each and every member of a certain number or class, each or all can sue. ' Every member of the class who could satisfy the jury that he was a person aimed at and defamed could recover.' (Per FARWELL, L. J., in *Jones* v. *Hulton & Co.* [1909] 2 K. B. 444, at p. 481.) " (Odgers Lib. & Sland. [5th ed.] 147; Newell Sland. & Lib. [3d ed.] § 285, and cases cited.) With these elementary rules in mind, let us examine the complaint to ascertain whether the plaintiff states a cause of action. He alleges that he was in the business of buying and selling motion picture prints, pictures, negatives and the right to exhibit the same, among others a picture called " The Feudists," and that he was generally dealing and trafficking in them as vendor and vendee and also as a broker; that he had established a substantial reputation and built up a profitable clientele and that he was lawfully engaged in the business of selling motion pictures and rights to exhibit the same in the city of Boston and other places. He thus describes himself as a reputable business man engaged in a lawful calling. He says that during all this time he was the owner of " certain rights to exhibit a certain motion picture film

called ' The Feudists ' and was authorized to sell and vend same." .It will be perceived that the plaintiff does not claim that he was the sole owner of this particular film or picture. He alleges that he was engaged in buying and selling pictures and the right to exhibit pictures, among others the particular picture named, and that he was the owner of " certain rights " to exhibit the picture. For aught that appears on the face of the complaint, the defendant may have had equal or similar rights in the picture referred to. Having thus described himself and his occupation and asserted his character as an honest man, the plaintiff alleges in the eighth article of his amended complaint " That in the motion picture business the term ' duper ' means that a person is engaged in an unlawful practice and deceiving the public with pictures that are stolen and sold without authority from real owners, and duping plants are institutions maintained by dishonest persons where ' duping ' is carried on on an extensive scale." We are, therefore, informed as to this illegal and criminal interference with the moving picture business. Certainly from the allegation of the complaint the plaintiff is not one of these nefarious conspirators against honest moving picture owners or producers, conspirators against the plaintiff himself as he is described in his pleading. He then alleges that one Smith is the president of the defendant corporation, and that on September 8 and 15, 1917, the defendant published " of and concerning the plaintiff " in certain moving picture journals articles which are substantially the same so far as the point under consideration is concerned. The article published on September 15, 1917, in the *Motion Picture News* is set forth at length in the complaint, and is as follows, including the innuendoes by which .plaintiff seeks to identify himself with the band of criminals referred to:

" ' VITAGRAPH IS TO FLING DUPERS INTO JAIL.'

" ' Albert E. Smith announces that Twenty-seven Features Have Been Copied and Are Being Sold Broadcast Over the Country.'

" ' The Film Dupers ' (meaning plaintiff) engaged in a particularly despicable kind of crime, are at large again, so

Albert E. Smith of Vitagraph states in a warning sent out to exhibitors all over the country.

" Through careful investigation Mr. Smith has discovered that twenty-seven Vitagraph features, deemed particularly salable, have been duplicated and are being offered for sale. Mr. Smith announces he purposes to apprehend the criminals and fling them into jail. (Meaning that plaintiff was a member of a gang of thieves operating among the public with stolen films.) Following is a list of the pilfered Vitagraphs:

" ' Battle Cry of Peace,' ' The Ninety and Nine,' ' Rose of the South,' ' The Test,' ' The Late Mr. Jones,' ' Vengeance of Durant,' ' Father's Hatband,' ' A Regiment of Two,' ' Fanny's Conspiracy,' ' How States Are Made,' ' Goodness Gracious,' ' A Lesson in Jealousy,' ' The Politician's Dream,' ' The Troublesome Secretaries,' ' Happy Go Lucky,' ' Chains of an Oath,' ' Betty in the Lion's Den,' ' The Violin of M'Sieur,' ' An Elopement at Home,' ' The Feudists ' (meaning and referring to plaintiff's picture), ' The Master Painter,' ' Her Husband,' ' When Women Go On the Warpath,' ' David Garrick,' ' Auld Lang Syne.'

" The first picture mentioned is a special ' Blue Ribbon ' feature, the next two are regular ' blue ribbon ' features and the balance of the list are reissues being put out by Greater Vitagraph under the brand name of Favorite Film Features.

" In the preliminary investigation President Smith has discovered that the films of several other companies are being duplicated and all the work apparently is being done by the same gang, judging from the similarity in the work, the printing and tinting. (Meaning that plaintiff was a member of a gang of thieves engaged in duping films.)

" Not satisfied with duping films the dishonest distributors go so far as to practically copy the paper of the regular manufacturers, making it appear that the exhibitors are doing business with the real owners of the pictures. (Meaning that plaintiff was not only a film thief but was also engaged in committing fraud upon the public and exhibitors of motion pictures, and in counterfeiting films of regular manufacturers.)

" The duped films are released simultaneously in Boston (meaning that plaintiff was a member of a gang of thieves

extensively operating in Boston), New York and St. Louis. It is believed that there are duping plants somewhere near New York City and Chicago.

" ' The best way to prevent this film duping and film stealing is for the exhibitors to purchase only from the recognized distributors of manufacturers,' says President Smith."

We fail to see how the plaintiff can assert that this article refers to him in any way. He cannot by force of innuendo make the person certain who was uncertain before. If we omit his innuendoes, no one reading the article could for a moment imagine that the plaintiff, a reputable business man, was a member of a gang of thieves extensively operating in Boston, New York and St. Louis. The plaintiff in his argument seeks to make much of the fact that the article charges the criminals with unlawfully duplicating and offering for sale the picture known as " The Feudists," and that it is asserted that the defendant company is putting out this picture under the brand name of Favorite Film Pictures. But this is no charge that plaintiff is engaged in any dishonest transaction. He is, to quote his complaint, engaged in buying and selling pictures and the right to exhibit the same, including " The Feudists; " he is the owner of " certain rights " to exhibit the picture and authorized to sell and vend the same. *Non constat* he may have sold rights in the picture to the defendant company, which makes no claim of sole ownership. As far as the plaintiff and defendant are concerned, the attack of the " gang of thieves " is on them both. They both suffer from the dishonest practice of the " dupers," and the article complained of expressly states that the defendant's president has discovered that the films of several other companies are being duplicated " by the same gang." We cannot see anything in this article reflecting on the plaintiff, and he cannot import into it, by his mere say-so, a meaning different from the plain, unambiguous intent of the words. The articles contained no libel on him on their face; if they related to him, it was only by reason of extrinsic facts and circumstances, and these are not pleaded. " If, however, the publication was not libelous on its face, but libelous only by reason of extrinsic facts and circumstances, *then it was necessary to allege such facts in her complaint, for the*

*statutory provision cited in no way has relieved the plaintiff from the obligation that rested on her in this respect under the common-law rules of pleading.* This was so held in *Fry* v. *Bennett* (5 Sand. 54, 66), and the general principle is admirably stated by Judge VANN in *Corr* v. *Sun Printing & Publishing Assn.* (177 N. Y. 131, 136): ' When an article is not libelous on its face, but becomes so only by reference to extrinsic facts, *such facts must be alleged in a traversable form, for they relate to the substance and not to the application of the charge.* To such an averment the statute, which changed the rules of pleading in actions for defamation, has no application.' Nor can the innuendoes supply the defect of a pleading in this respect, for ' An innuendo does not enlarge the matter set forth specially in other portions of the complaint. It only explains the application of the words employed [and] when not justified by the antecedent facts to which it refers, so that rejecting it the words are not actionable, a demurrer will lie.' (*Fleischmann* v. *Bennett,* 87 N. Y. 231, 238. See *Caldwell* v. *Raymond,* 2 Abb. Pr. 193; *Blaisdell* v. *Raymond,* 4 id. 446, 458, and *Fry* v. *Bennett, supra.*) In my judgment the article does not on its face libel any individual." (CULLEN, Ch. J., *Van Heusen* v. *Argenteau,* 194 N. Y. 309.) It follows that the amended complaint does not state facts sufficient to constitute a cause of action against the defendant, and the order appealed from must be reversed, with ten dollars costs and disbursements, and the demurrer to the complaint is sustained, with ten dollars costs, with leave to plaintiff to serve an amended complaint upon payment of costs.

THOMAS, MILLS, RICH and PUTNAM, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and demurrer to the complaint sustained, with ten dollars costs, with leave to plaintiff to serve an amended complaint upon payment of costs.