**UNITED STATES v. C. THOMAS STORES, INC., et al.**

**No. 7432.**

District Court, D. Minnesota, Fourth Division.

Feb. 26, 1943.

---

[1] Memorandum opinion.

R. H. Fryberger, of Minneapolis, Minn., for defendants.

Victor E. Anderson, U. S. Atty., and John W. Graff, Asst. U. S. Atty., both of St. Paul, Minn. (William L. Prosser, State Counsel, Donald F. Pratt, Senior Enforcement Atty., Office of Price Administration, both of St. Paul, Minn., of counsel), for plaintiff.

NORDBYE, District Judge.

Each of the counts, Nos. 1 to 108, inclusive, charges the sale of a certain commodity in violation of the maximum price established for such commodities under the terms and regulations promulgated in pursuance of Section 2 of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U. S.C.A. Appendix 901–946. Count No. 109 charges a violation of the regulations re-

quiring the posting of a statement showing the price charged for the commodity during March, 1942, and the highest offering price, as required by Regulation 11(b). Count No. 110 charges the failure of the defendants to mark the maximum price of all cost-of-living commodities as required by Section 13(a) of the Regulations. Special demurrers are interposed by defendants Mutual, Bailey and Rasmussen as to counts Nos. 109 and 110 on the grounds that such counts do not set forth facts sufficient to constitute a violation by them.

Several grounds in support of the demurrers are separately urged as to counts Nos. 1 to 108, inclusive, but only the following need be considered: (1) That Congress has no power to legislate a Price Control Act where the price fixing concerns commodities in intrastate commerce; (2) that the Act is unconstitutional as unwarranted delegation of power; and (3) that the defendants are denied the constitutional right of due process.

■■ Obviously, this Act is not dependent on the commerce clause. It rests on the war powers granted in the Constitution. That Congress under its war powers has the authority to control inflation cannot be doubted. The unbridled mounting of prices would not only cripple the economic resources of the Nation, but would weaken and undermine the morale of the people as well. To state that victory on the home front is essential to a successful consummation of the conflict which now confronts this Nation may appear trite and stereotyped, but it nevertheless enunciates an impelling fact. The coming of war does not in and of itself give rise to any additional constitutional power, but the power to meet any emergency caused by war is unquestionably granted by the Constitution and any limitation on such power must likewise be found therein. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194. Were it otherwise, this Nation would find itself utterly impotent to wage the present war. Any incidental inconvenience or loss caused by the fixing of prices under the Act is one of the many burdens which citizens during war ·times must bear. Congress drafts soldiers to fight the Nation's battles, and it can also, with constitutional limitations, regulate and draft the resources of the Nation. The Supreme Court has already spoken on this question. In Northern Pacific R. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897, it has upheld the power to take over and operate the railroads; in Dakota Central Telephone Co. v. South Dakota, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623, to take over and operate telegraph and telephone systems; in Moore & Tierney, Inc., v. Roxford Knitting Co., 2 Cir., 265 F. 177, 11 A.L.R. 1415, certiorari denied 253 U.S. 498, 40 S.Ct. 588, 64 L.Ed. 1032, to place compulsory orders for materials required for national defense; in Selective Draft Law Cases (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas. 1918B, 856, to draft man power for service in the armed forces; in Jacob Ruppert, Inc., v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260, to prohibit the manufacture or sale of alcoholic beverages; in Highland v. Russell Car & Snow Plow Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688, to regulate the prices of certain commodities; in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165, to control rents.

■ As before stated, the war power of Congress is subject to constitutional limitations, and the only limitation which needs to be considered on this demurrer is the alleged unlawful delegation of power. In considering this constitutional limitation on the power of Congress, a practical and rational consideration must be applied. The regulation of prices by Congress requires the consideration of intricate and complex details, which must be adapted and applied as conditions from time to time change. Any price control scheme in its inception is bound to be somewhat experimental. It is by trial and error that its success will be finally achieved. Any scheme that is promulgated must be so elastic as to be adjustable to changing conditions. In war, speedy and swift action is highly necessary. While Congress cannot abdicate the legislative power granted to it under the Constitution, it should not be required to perform the impossible and impracticable in promulgating vital legislation. The test, therefore, to be applied is this: Has Congress clearly and fully stated its purposes and objects, and has it established standards by which such purposes are to be accomplished?

In McKinley v. United States, 249 U.S. 397, 39 S.Ct. 324, 63 L.Ed. 668, the Supreme Court approved a delegation of authority to the Secretary of War "to do everything·

by him deemed necessary to suppress and prevent" prostitution "within such distance" of Army centers "as he may deem needful." In Dakota Central Telephone Co. v. State of South Dakota, 250 U.S. 163, 39 S. Ct. 507, 508, 63 L.Ed. 910, 4 A.L.R. 1623, a joint resolution authorizing the President to take over the telephone system of the country "whenever he shall deem it necessary for the national security or defense * * * and to operate [it] in such manner as may be needful or desirable" was held valid. And, in United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 4, 71 L.Ed. 131, the statute authorizing the sale of alien property by the Alien Property Custodian "under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe," was held valid. Reference may also be made to United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S. Ct. 216, 217, 81 L.Ed. 255, wherein there was approved the delegation to the President of the power to prohibit the sale of arms to a country at war when he determined that such a prohibition would "contribute to the reestablishment of peace" between the countries engaged.

Two late cases may be referred to. In United States v. Rock Royal Co-op., 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, the provision in the Agricultural Marketing Agreement Act of 1937 authorizing the Secretary of Agriculture to set minimum milk prices based on parity, but adjusted if parity is unreasonable in view of the price of feeds and economic conditions affecting supply and demand, was sustained, and in Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263, the court sustained the delegation of powers by Congress under the Bituminous Coal Act of 1937, where maximum coal prices are to reflect a reasonable return on the fair value of the property and where minimum prices must conform to standards requiring computation of the weighed average cost for each minimum price area and a classification of coal which is just and equitable to producers and which has due regard to the interest of the consuming public.

Upon examination of the Emergency Price Control Act of 1942, it will be found that its objects are set forth in comprehensive detail, among which are: " * * * To stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * * to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships * * * to the Federal, State, and local governments, which would result from abnormal increases in prices; * * * to prevent a post emergency collapse of values; * * *." 50 U.S.C.A.Appendix § 901(a).

The Administrator is required to draft maximum price and rent regulations to effectuate such purposes. It will be observed that the maximum prices are to be those which in the Administrator's judgment will be generally fair and equitable. So far as practical, he is required to ascertain and give consideration to the prices prevailing between October 1 and 15, 1941. He is required to make adjustments "for such relevant factors as he may determine and deem to be of general applicability," including those specifically mentioned in the Act. Every regulation or order issued must be accompanied by a statement of "the considerations involved in the issuance of such regulation or order," and before issuing any regulation or order, the Administrator is required, so far as practicable, to "advise and consult with representative members of the industry which will be affected by such regulation or order." Where any maximum price has been established for a commodity, the Administrator shall, "at the request of any substantial portion of the industry subject to such maximum price, regulation, or order of the Administrator, appoint an industry advisory committee," and, in connection with this phase of the Act, "The Administrator shall from time to time, at the request of the committee, advise and consult with the committee with respect to the regulation or order." 50 U.S.C.A.Appendix § 902. It is urged that the standards are general and that much is left to the discretion and judgment of the Administrator. But, as a practical matter, how could it be otherwise? To straight-jacket the Administrator, in view of the fast-moving changes in the problems presented, would destroy that which Congress seeks to effectuate. See

Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 145, 146, 657, 61 S.Ct. 524, 533, 85 L.Ed. 624, wherein the court stated: "The factors to be considered in arriving at these determinations, both those specified and 'other relevant factors', are those which are relevant to or have a bearing on the statutory objective. The fact that Congress accepts the administrative judgment as to the relative weights to be given to these factors in each case when that judgment in other respects is arrived at in the manner prescribed by the statute, instead of attempting the impossible by prescribing their relative weight in advance for all cases, is no more an abandonment of the legislative function than when Congress accepts and acts legislatively upon the advice of experts as to social or economic conditions without re-examining for itself the data upon which that advice is based."

■ Moreover, this is not a peace-time statute. Congress was confronted with a war emergency, and it is generally recognized that broad delegation may be permitted under such circumstances. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194. The need for flexibility to meet the emergency requires that the standards be framed in such language which will permit the accomplishment of the legislative purpose. See Henderson v. Kimmel, D.C., 47 F.Supp. 635, 645, which has sustained the Act as against the very objections urged herein.

■■ It is apparently recognized by the Government that this court is vested with jurisdiction to determine the constitutionality of the Act, but it asserts that this court is bereft of any jurisdiction to consider the validity of any regulation, order, or price regulation promulgated by the Administrator. That the position of the Government in this regard is sound seems free from doubt. Congress has established a plan for administrative and judicial review. After the exhaustion of administrative remedies, the judicial review is vested in the Emergency Court of Appeals, Section 204(c), 50 U.S.C.A.Appendix § 924(c). Defendants urge, however, in addition to the other constitutional objections asserted, that they are denied due process in that, in the proceeding lodged against them, they will have no opportunity to litigate the reasonableness or validity of any of the regulations they are charged with violating. However, if the defendants desired to challenge the validity of any regulation or price maximum, they were afforded full opportunity to do so under the administrative remedies provided under the Act. In so far as judicial review is concerned, however, the only court that has any authority as to the validity of any regulation or price maximum is the court specially constituted for that purpose. No other construction can be given to the language appearing in Section 204(d) of the Act, which reads: "* * * Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

Congress has said in effect that, if anyone wilfully violates any of the regulations promulgated under the Act, he does so at his peril. It has imposed the duty "to obey first and litigate afterwards." Henderson v. Kimmel, supra.

■ The special demurrers interposed by the defendants Mutual, Bailey and Rasmussen as to counts Nos. 109 and 110 are without merit. It is apparently the Government's position that these defendants have violated the regulations referred to by reason of the fact that they aided and abetted the C. Thomas Stores in such violations. Of course, if this is established at the trial, such defendants will be guilty to the same extent as the principal. It follows, therefore, that the demurrers to each of them must be, and hereby are, overruled. Defendants, and each of them, are granted an exception.