**BROWN, Price Adm'r, v. W. T. GRANT CO.**

**SAME v. J. J. NEWBERRY CO.**

**SAME v. J. C. PENNEY CO.**

**SAME v. McCRORY STORES.**

District Court, S. D. New York.
Dec. 14, 1943.

184

Mitchell I. Jelline, Chief Enforcement Attorney, Office of Price Administration, of New York City (Fleming James, Jr., Chief, Litigation Branch, Office of Price Administration, of Washington, D. C., and Atwood Cranston, of Washington, D. C., Litigation Attorney, Office of Price Administration, of counsel), for plaintiff.

Katz & Sommerich, of New York City (Maxwell C. Katz, Otto C. Sommerich, Benjamin Busch, and Eugene M. Foley, all of New York City, of counsel), for defendant Grant.

Claude V. Pallister, of New York City, for defendant Newberry.

Gwinn & Pell, of New York City, for defendant Penney.

Sullivan & Cromwell, of New York City, for defendant McCrory.

RIFKIND, District Judge.

By his complaint, in the action against W. T. Grant Company, the Price Administrator alleges that during the period between February 24, 1943 and the date of the complaint (August 9, 1943), there was, and still is, in effect a regulation known as Maximum Price Regulation No. 330, as amended—Retailers and Wholesalers Prices for Women's, Girls' and Children's Outerwear Garments (8 F.R. 2209 et seq.), pursuant to Sec. 2 of the Emergency Price Control Act of 1942, 50 U.S.C.A. Sec. 901 et seq.; that defendant is the owner and operator of 495 retail stores throughout the United States; and that during said period defendant sold, delivered, and offered to sell and deliver at retail, garments listed in said Regulation, at prices in excess of the maximum prices established therefor by the Regulation; and he prays for an injunction restraining the violations.

The defendant, by its answer, admits that it owns and operates 492 retail stores located in forty States; that "the Administrator issued a paper denominated Maximum Price Regulation No. 330"; that during the mentioned period it has sold and is now selling garments listed in the Regulation; denies that the Regulation has been in effect and that it has sold garments at prices in excess of ceiling prices. In addition, defendant pleads eight affirmative defenses which may be summarized as follows:

1. That the defendant operates its 492 stores as one seller, and as such one seller it is not now selling, nor has it at any time sold, any of the garments referred to in the Regulation at prices in excess of the maximum prices permitted to the defendant as such one seller.

2. That the Regulation, as construed and enforced by the plaintiff, contravenes Section 2(h) of the Emergency Price Control Act of 1942, in that it operates to compel changes in the business practices and methods of the defendant and of the industry in which it is located.

3. That the Regulation contravenes the Act in that it is not generally fair and equitable and is discriminatory in that it prevents the defendant from selling to customers the same low price lines sold by the defendant in March, 1942, while defendant's competitors, engaged in business in the same communities where the defendant's stores are located, are permitted under the Regulation to sell merchandise of the same grade and quality at substantially higher prices.

4. That the Regulation is void ab initio and was not validly issued, in that the Administrator, prior to the issuance thereof, did not advise and consult with representative members of the industry as required by Section 2(a) of the Act.

5. That in contravention of the Act, the Regulation establishes maximum prices that are not generally fair and equitable or of general application, as required by Section 2 of the Act.

6. That the Act and the Regulation issued thereunder are unconstitutional in that the grant of powers thereunder was improperly delegated by Congress in contravention of the provisions of Article I, Section 1 of the Constitution of the United States.

7. That, as construed and sought to be enforced by the plaintiff, the Act and the Regulation are arbitrary, unreasonable, capricious and oppressive, and that, by reason thereof, both the Act and the Regulation violate the Fifth Amendment to the Constitution of the United States, in that they deprive the defendant of property without due process of law.

8. That the Act and the Regulation are unconstitutional and void, in that they limit and restrict the defendant and others in interposing any defense available to them in any legal forum in which they may be charged with the violation of said Act or any regulation allegedly issued thereunder, and thereby deny it due process of law.

Plaintiff moves to strike all the defenses except the first, pursuant to Rule 12(f), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, on the ground "that they are irrelevant and immaterial, and that Section 204(d) of the Emergency

186

Price Control Act of 1942 provides that no Court other than the Emergency Court of Appeals and the Supreme Court of the United States shall have jurisdiction to consider the questions raised by such defenses."

Defendant cross-moves to dismiss the action on the ground that the complaint fails to state a claim upon which relief can be granted, Rule 12(b), F.C.R.P.

It is manifestly appropriate to deal first with the cross-motion.

### Sufficiency of the Complaint

■ Strictly speaking, a motion under Rule 12(b) (6) is no longer in order after the pleadings are closed. The Rule provides: "A motion making any of these defenses shall be made before pleading if a further pleading is permitted." I see no reason, however, why I cannot treat the motion as one for judgment on the pleadings under Rule 12(c). The ground of defendant's motion remains the same, that the complaint fails to state a claim upon which relief can be granted.

The claimed deficiencies in the complaint are:

■ (1) That in one part of the complaint defendant is charged with selling *the* garments listed in Regulation No. 330, whereas in another part of the complaint it is charged with selling *garments* listed in the Regulation. This alleged inconsistency is, however, absent from the complaint. In describing defendant's business the complaint alleges that defendant has sold *the* garments listed in the Regulation; in charging the violation, the complaint alleges that the defendant sold *garments* listed in the Regulation.

■ (2) That the complaint fails to state which garments were sold, the specific price at which or below which the garment should have been sold, and the price at which the defendant sold such garments; in other words, that the complaint merely charges that the defendant violated the law. This objection is without merit. A complaint should contain a short and plain statement of the claim showing that the pleader is entitled to relief, Rule 8(a), F.R. C.P. The complaint under review seeks to enjoin, not specific transactions, but a course of conduct and it alleges, as ground for the requested relief, that defendant has engaged in the proscribed course of conduct. The basic requirements of a plead-

ing are, therefore, satisfied. Nonetheless, of course, the defendant might then object that the complaint does not disclose enough to enable it to prepare a responsive pleading. That objection is, however, no longer available to defendant since it has already served its answer. Whether, in view of the fact that maximum prices under the Regulation may be different for each seller, the allegation in the complaint that the defendant has sold at prices in excess of those authorized is a mere conclusion or an allegation of law, is an inquiry which, under the Federal Rules of Civil Procedure, the courts need not pursue, I Moore's Federal Practice p. 553. What has been said is applicable to the objection that in certain instances Regulation No. 330 has made applicable the standards of General Maximum Price Regulation (7 Fed.Register 3153 et seq.). To that extent, the provisions of General Maximum Price Regulation are part of Regulation No. 330.

■ (3) That the action is premature because it was brought before the expiration of the statutory period within which the defendant could protest to the Administrator and file its complaint in the Emergency Court of Appeals. The defect, if it be one, appears on the face of the complaint and defendant may now avail himself thereof on this motion.

Since, for the purposes of this phase of its motion, defendant has recourse to the Act, whereon plaintiff relies for his cause of action, I shall, at this point, assume its validity. Section 203(a) authorizes any person subject to any regulation issued by the Administrator to file a protest within 60 days after the issuance of the regulation, and after such 60 days, to file a protest on grounds arising after the expiration of the 60-day period. Within 30 days after denial of a protest, a person aggrieved may file a complaint with the Emergency Court of Appeals, Section 204(a). Review of the decision of that Court may be had in the Supreme Court on petition for a writ of certiorari. No court may issue any interlocutory injunction staying the effectiveness of any regulation and only the Emergency Court of Appeals and the Supreme Court, on review of the judgments of the Emergency Court of Appeals, may issue permanent injunctions, Section 204(c) and (d). Injunctions granted by the Emergency Court are stayed for thirty days, and if a petition for certiorari is granted by the Supreme Court to review an injunction

issued by the Emergency Court, the effectiveness of the judgment is postponed pending disposition by the Supreme Court.

■ Words cannot make plainer the intention of Congress that the enforcement of the regulations shall not be hampered by judicial restraint pending final adjudication by the specified mode of review. The argument advanced by defendant flies in the face of such legislative intent for the effect of its contention is that the Price Administrator is, in fact, stayed from enforcing his regulations until defendant's opportunity to litigate administratively and in the Emergency Court of Appeals has been exhausted. Defendant would convert a command for unobstructed enforcement into a virtual suspension of enforcement for at least sixty days. Defendant relies upon a comment in United States v. Central Packing Corp., D.C.E.D.N.Y., 51 F. Supp. 813, September 13, 1943, per Galston, J. The comment was peripheral in character and in the subjunctive mood. It is not authority for defendant's position.

For the foregoing reasons, defendant's cross-motion to dismiss the complaint is denied.

### Sufficiency of Affirmative Defenses

Plaintiff's motion to strike defendant's affirmative defenses reaches into the very tender and membranous partitions which separate the three primary divisions of government under the Constitution; it probes into the heart of due process; it squarely poses for decision the question left open by the Supreme Court in Lockerty v. Phillips, 1943, 319 U.S. 182, 189, 63 S.Ct. 1019.

The challenged defenses fall into several categories: one attacks the constitutionality of the statute; another disputes the constitutionality of the Regulation; a third asserts lack of statutory authority for, and violation of statutory limitations upon, the Regulation. Some of the defenses, in form at least, extend into more than one category.

The plaintiff's condemnation of the defenses in the last two categories, addressed to the Regulation, is based entirely on Section 204(d) of the Act, the most relevant portion of which reads: "The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2 * * *, of any price schedule effective in accordance with the provisions of section 206 * * *, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

Plaintiff concedes that the defendant may raise the issue of the constitutional validity of the statute, but it asserts this court's lack of jurisdiction to consider the validity of the regulation.

In Lockerty v. Phillips, supra, the Supreme Court was not faced with the problem here considered. In that case wholesale meat merchants brought suit in a district court to enjoin the United States Attorney for the district from prosecuting criminal proceedings against them for violation of the Act and of a regulation. Since the statute withdrew from the district courts equity jurisdiction to restrain the enforcement of the Act and the regulations, and conferred such jurisdiction exclusively upon the Emergency Court and the Supreme Court, it was held that the district court properly dismissed the suit for lack of jurisdiction. "We have no occasion to determine now whether, or to what extent, appellants may challenge the constitutionality of the Act, or the Regulation in courts other than the Emergency Court, either by way of defense to a criminal prosecution or in a civil suit brought for some other purpose than to restrain enforcement of the Act or regulations issued under it." 319 U.S. at page 189, 63 S.Ct. at page 1023.

That question is now here. The district courts having been given jurisdiction to enforce the statute and the regulations, may they be deprived of the power to consider the validity of the regulation which is sought to be enforced?

■ When the question is thus framed it seems to demand a negative answer. Manifestly, under a constitutional system, Congress cannot command the judges who

have taken an oath to defend the Constitution, to enforce regulations which violate the Constitution. And the command to enforce invalid regulations is not any less offensive merely because another court may set them aside when in its opinion they conflict with the supreme law of the land.

These considerations constitute the basic theorems of government under the Constitution and the courts have consistently given them effect. Marbury v. Madison, 1803, 1 Cranch, 137, 2 L.Ed. 60.

■ What the question, as framed, presupposes is not a denial of jurisdiction to the district courts to hear a type of controversy—a power clearly within the Congressional domain—but a denial to the district court of power to consider whether the regulation it is asked to enforce, by criminal sanctions, equitable remedies, or treble damage suits, is repugnant to the Constitution and laws of the United States. Since the courts and not Congress are the final authorities on constitutional validity, Congress cannot make valid that which conflicts with the Constitution, and cannot command enforcement of that which is, by hypothesis, not the law of the United States.

■ So well established are these propositions and so long have they been treated as axiomatic by both courts and legislatures, that we should not impute an intention to Congress to violate them unless every avenue of escape is barred. And so we return to the statute to see whether the question as framed does in fact pose the true issue.

Section 204(d) on its face begs to be construed. So we find that Judge Magruder in Rottenberg v. United States, 1 Cir., 137 F.2d 850, 858, August 23, 1943, has judicially amended it by adding at the end thereof the words, "as long as such regulation has not been set aside by the statutory procedure." Were such words not to be implied in the statute we would face the absurd result that one could be enjoined from violation of, or punished for violating a regulation which the Supreme Court had already held invalid.

■ Other hypothetical cases (admittedly a very risky mode of reasoning) suggest the thought that the statute requires judicial manipulation. Thus, despite the ban on consideration of the "validity" of the regulation, I doubt it would be contended that, in answering an enforcement suit, the defendant could not plead that the proffered regulation was in fact never issued; or that the regulation has been repealed; or that the Administrator who issued it was in fact an imposter; or that the Supreme Court had held the regulation unconstitutional or otherwise invalid. The last illustration is conceded by plaintiff, and that alone is sufficient for my point that consideration of validity is not, and indeed cannot be, barred to the district courts.

■ Having reached this point, however, the judicial obligation does not cease. If it can be done, we must give effect to the intention of Congress within the limits of the Constitution. To discover its intention, a consideration of Section 204(d) in its context is in order.

The purposes of the Act have been fully revealed to us by Congress in Section 1, which is entitled "Purposes; time limit; applicability."

Section 1(a) provides: "It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; * * *."

By its terms, the Act and all regulations issued thereunder are to terminate on June 30, 1943, or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of Congress, declaring that the further continuance of the authority granted by the Act is not necessary in the interest of the national defense and security, whichever date is the earlier. The date of June 30, 1943, has been extended to June 30, 1944, by Public Law No. 729 of the 77th Congress. The issuance of price schedules and regulations by the Price Administrator is authorized and an Emergency Court of Appeals is established upon which is conferred exclusive jurisdiction to enjoin the enforcement of any regulation, and it, too, is denied power to issue interlocutory injunctions or temporary restraining orders. Its final injunctions are stayed for 30 days and until the Supreme

Court has either denied the petition for certiorari or made other final disposition.

 The object of this procedure is clearly to obtain territorial uniformity on the question of the validity of the regulations and to compel obedience to the regulations pending an adjudication of validity In other words, Congress has declared that it shall be unlawful to engage in conduct proscribed by a regulation issued by the Administrator until the regulation is set aside by the Administrator or by the prescribed mode of review. We are not, because we cannot be, forbidden to consider the validity of this Congressional enactment; but considering it, I conclude that it is a valid exercise of the war power; and since it is a valid exercise of the war power, we are not, in fact, commanded to enforce invalid regulations and to punish violations of invalid laws of the United States.

That Congress intended to exercise its war power is made plain from its declaration that the measure is "necessary to the effective prosecution of the present war" and from the very circumscribed time limitations which it has placed upon the duration of the Act.

 Whether it is a valid exercise of the war power is a question judicially cognizable. The most recent pronouncement of the Supreme Court on the extent of the war power is found in Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 1382, June 21, 1943. In that case citizens of the United States were subjected to restraints, by reason of their Japanese ancestry, under circumstances which, absent the war power, would clearly amount to a violation of due process.

In the instant case, accepting the answer as true, the defendant is denied the right to engage in certain lines of business whereas its competitors are permitted to engage therein. Certainly the rights so abridged are no more sacred and the discrimination no more violent than were involved in the Hirabayashi case.

In that case the court said: "The war power of the national government is 'the power to wage war successfully.' * * * The power is not restricted to the winning of victories in the field and the repulse of enemy forces. * * * Where * * * the conditions call for the exercise of judgment and discretion and for the choice of means by those branches of the Government on which the Constitution has placed the responsibility of warmaking, it is not for any court to sit in review of the wisdom of their action or substitute its judgment for theirs." The question, said the court, is whether Congress had "reasonable ground for believing that the threat is real."

 The question before us, therefore, resolves itself into whether Congress had reasonable ground for believing that the threat to the national safety was real, and warranted the requirement of obedience to price regulations pending their centralized review for arbitrariness, caprice, undue hardship, or noncompliance with Congressional mandates.

The familiar facts relative to the spiral of inflation indicate that Congress acted well within the bounds of reason in requiring obedience pending litigation. That is so because in dealing with inflation the consequences of disobedience are irremediable. Increased prices in one area cause a flow of commodities to that area and stringency in others, followed by dissatisfaction among wage earners and others, and demands for increased wages, interruptions to war production, higher costs and more higher prices.

It is not necessary that the court should find that such indeed would be the history of disobedience; it is sufficient to sustain the legislative act that Congress had a reasonable basis for so believing.

Nor is this the only instance where the courts, in response to legislative mandate, require obedience before litigation. Thus, under the Selective Service Act, 50 U.S.C. A.Appendix, § 301 et seq., it has been held that one accused of failure to report for induction may not defend on the ground that the alleged order was improper; if he would challenge such an order, he must, first submit to induction and apply for a writ of habeas corpus thereafter. United States v. Kauten, 1943, 2 Cir., 133 F.2d 703. In that case the court said, at page 706 of 133 F.2d:

"Section 10(a) (2) [of the Selective Training and Service Act of 1940, 50 U.S. C.A.Appendix § 301 et seq., § 310(a) (2)] provides that:

" 'The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe.' The foregoing clause shows that

Congress intended so far as possible to prevent delay * * * by court interference * * *.

"It results from the foregoing that the registrant was bound to obey the order to report for induction even if there had been an error of law in his classification. The Administrative Board had jurisdiction of his case and its order could not be wilfully disregarded."

██ Here, too, the Price Administrator's regulation could not be disregarded, even for error of law, provided he had jurisdiction to make the regulation. This proviso gives the rational basis for the distinction drawn by the Act between a challenge to the validity of the statute itself and a challenge to the validity of the regulation. If the statute itself were invalid the Administrator would lack jurisdiction. In other words, Congress may, pending a specified mode of review, command obedience to a possibly erroneous regulation under a valid statute but may not command obedience to an invalid statute.

Another familiar illustration of insistence upon obedience regardless of validity of the command, where there is jurisdiction to issue commands, is the rule that it is no defense to a contempt proceeding that the injunction order was erroneous. S.E.C. v. Okin, 2 Cir., 137 F.2d 862, August 18, 1943; Howat v. State of Kansas, 1922, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550. In the last-cited case (258 U.S. at page 189, 42 S.Ct. at page 280) the court said: "An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case."

Thus it appears that the statute under review is not a legal anomaly but belongs to a well-established category of legal control. Of such categories there are at least three, in relation to the injunctive process.

(1) Where Congress has declared a rule of conduct and imposed penalties for departure therefrom, and the courts exercise their traditional equity power to restrain prosecution pending adjudication. Shields v. Utah Idaho R. Co., 1938, 305 U.S. 177, 183, 59 S.Ct. 160, 83 L.Ed. 111; Switch-men's Union of North America v. National Mediation Board, 64 S.Ct. 95, November 22, 1943.

(2) Where Congress has declared a rule of conduct and provided an administrative procedure for its application, and the courts have refused to enjoin administrative action but have insisted that the administrative remedy be first exhausted. Myers v. Bethlehem Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Endicott Johnson Corp. v. Perkins, 1943, 317 U.S. 501, 63 S. Ct. 339; United States v. Kauten, 1943, 2 Cir., 133 F.2d 703.

(3) Where Congress has declared a rule of conduct, provided an administrative procedure, and a system of judicial review, and pending the final determination of such administrative and judicial review has, in effect, enjoined noncompliance.

██ Our case falls into the third category. In the exercise of its war power, Congress has declared that the nation would suffer irreparable damage were disobedience tolerated pending adjudication. Such declarations of fact by Congress are not conclusive on the courts. St. Joseph Stock Yards Co. v. United States, 1936, 298 U.S. 38, 51, 56 S.Ct. 720, 80 L.Ed. 1033; Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241; 56 H.L.R. 1324. But in the instant case the judgment of the legislature is reasonably supported in fact and is exercised in the sphere of war-making wherein its pronouncement is entitled to the greatest leeway. Hirabayashi v. United States, supra.

██ For the foregoing considerations I have come to the conclusion that the statute does not offend due process under the Fifth Amendment.

██ I shall not labor the point that it does not offend the Constitution as an unwarranted delegation of legislative power to an administrative agency. The authorities, as far as I have been able to discover, have uniformly held that the statute meets the test of proper delegation. Rottenberg v. United States, 1 Cir., supra; United States v. C. Thomas Stores, Inc., D.C. Minn.1943, 49 F.Supp. 111; United States v. Hark, D.C.Mass., 1943, 49 F.Supp. 95; United States v. Slobodkin, D.C.Mass., 1943, 48 F.Supp. 913; Brown v. Wright, 4 Cir., 137 F.2d 484, Aug. 11, 1943; Henderson v. Kimmel, D.C.D.Kan.1942, 47 F. Supp. 635; Brown v. Wick, D.C.E.D.Mich., 1943, 48 F.Supp. 887.

That the Congress has authority, in the exercise of its war power, to regulate prices is not challenged by the defendant and cannot be successfully challenged. Highland v. Russell Car & Snow Plow Co., 1929, 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688.

This disposes of all the constitutional objections addressed to the statute itself, and since they are all wanting in merit, it follows that plaintiff's motion to strike the sixth and the eighth defenses must be granted.

The eighth defense must also be stricken for an independent reason. That defense asserts the constitutional invalidity of section 204 of the Act which denies to this court the power to consider the validity of the regulations. Even if defendant were right in its contention, the only effect thereof would be to authorize the interposition of the other challenged defenses. Surely it cannot be contended, in view of the separability clauses, section 303, that the invalidity of section 204 would render the whole statute bad.

The seventh defense is in form an attack on both the statute and the regulation, but in substance it challenges only the regulation. The defense must therefore be stricken.

The second, third, fourth and fifth defenses all assert the invalidity of the regulation either because statutory requirements were not observed in its promulgation or because statutory standards have not been met in its provisions. For the reasons already stated these defenses may not be interposed in this proceeding and they must, therefore, be stricken.

One additional argument requires brief comment. Defendant argues that by its terms section 204(d) applies only to regulations issued "under" section 2; and that a regulation issued under a statute means one issued in conformity therewith. Risley v. Village of Howell, 6 Cir., 1894, 64 F. 453, 456. But the effect of defendant's argument is that the courts would be excluded by section 204(d) from considering the validity of valid regulations only. Such an absurd intention may not be imputed to the legislature.

In substance, I hold that Congress has validly ordained obedience to the regulations issued by the Administrator pending administrative protest and specified judicial review of the regulation, and consequently

the defense that the regulation is invalid, unaccompanied by an allegation that it has been held invalid by a decree authorized by the statute, is insufficient in law, and should be stricken on motion.

This constitutes not an abdication of jurisdiction but the exercise thereof to the full extent conferred by the Constitution.

The motion to dismiss the action is denied.

The motion to strike the second, third, fourth, fifth, sixth, seventh and eighth defenses is granted.

The motions in Brown v. J. J. Newberry Company, Brown v. J. C. Penney Company, and Brown v. McCrory Stores present the same questions. The motions to strike are granted in accordance with this opinion.

Settle orders.