### WATTS–WAGNER CO., Inc., v. GENERAL MOTORS CORPORATION.

District Court, S. D. New York.

Dec. 19, 1945.

Irving Davis and Allan Hyman, both of New York City, for plaintiff.

John Thomas Smith, of New York City (Anthony J. Russo, of New York City, of counsel), for defendant.

CONGER, District Judge.

Defendant moves to dismiss the complaint for failure to state a claim upon which relief may be granted.

Although the answer has been served, it appears entirely proper to consider the motion. See Brown v. W. T. Grant Co., D.C., S.D.N.Y.1943, 53 F.Supp. 182; McLaughlin v. Curtis Publishing Co., D.C.S.D.N.Y.1943, 5 F.R.D. 87.

Two causes of action are alleged in the complaint. The first is one of libel in which the defendant is charged with having damaged plaintiff's individual reputation, good name and credit by causing to be published in newspapers throughout the United States, and especially in the New York Times, certain defamatory statements which had previously been made the subject of part of a letter from defendant to its distributors. The second cause of action, based upon the same statements, is for disparagement of plaintiff's product.

The plaintiff has been and still is engaged in the manufacture, sale and distribution of a product known as "Hi-Charge", which is allegedly designed to lengthen the useful life of electric storage batteries and increase their efficiency. The defendant manufactures, sells and distributes electric storage batteries as a part of its business.

The aforementioned letter to the distributors, dated April 3, 1945, after alluding to the existing restrictions on battery production and the importance of awakening the public to the necessity of regular inspection and proper care of the available batteries, contained the following:

"2. The public and the battery dealers must be warned against the army of racketeers who are sweeping the country, taking advantage of the circumstances by selling the unwary car owner or battery dealer some fancy packaged flour, sand, Epsom Salts, or just any old white powder as a panacea for all battery troubles. Mr. E. T. Foote, President of the American Association of Battery Manufacturers, stated that some of this stuff is actually harmful to batteries, and as such, will shorten their life.

"We believe the best method of tackling this job is through the daily newspapers. Therefore, we suggest that you take the attached article to your local newspapers, explain the situation to the Automobile Editors, and request them to run the article as a News item at an early date, in the Interest of the Motoring Public's Welfare, and Winning the War. * * *"

In the article accompanying the letter, it was stated:

"Unless car owners take it upon themselves to give immediate and constant attention to their batteries, many vehicles may be forced out of service within the next few months.

"This warning was sounded today by E. T. Foote, president of the American Association of Battery Manufacturers. He placed new and pointed emphasis on the fact that increased military requirements have greatly curtailed production of storage batteries for civilian use.

"To prevent unnecessary interruption of the nation's vital wartime automotive transportation system, Mr. Foote urged every car owner to take action at once by having his battery checked and serviced by a reliable battery service station. He stressed the necessity of having batteries checked at least once a month, and in extremely warm climates or seasons, twice a month.

"As another caution against premature battery failure, Mr. Foote urged car owners to beware of battery 'dopes'. He declared that wartime conditions, impelling all car owners to take every precaution to keep their vehicles in operation for the longest possible period of time, have foster-

ed a battery 'doping' racket that is sweeping the country. 'These racketeers', he said 'are preying on the car owner and battery dealer, selling them flour, sand, Epsom Salts, or just any old white power as the panacea for all battery troubles.'

"The racket has assumed such proportions in recent months, Foote said, that the U. S. Department of Commerce, Bureau of Standards and the National Better Business Bureau of New York City have issued bulletins in which the evil is thoroughly exposed. In further cautioning car owners against the use of battery 'dopes' in any form, he pointed out that most battery manufacturers void . the guarantee on their batteries if other than sulphuric acid is added."

The item published in the New York Times was of similar content.

The sole problem presented by this motion is whether the statements contained in the letter and news releases have such reference or application to the plaintiff and its product as to constitute a libel and disparagement.

■ In general, defamatory statements used broadly in respect to a general class of persons give no right · of action to a member of the class, unless some circumstance makes the statements reasonably susceptible of special application to any individual of the class. See Restatement of Law of Torts, vol. 3, § 564; Feely v. Vitagraph Co. of America, 184 App.Div. 527, 172 N.Y.S. 264; Lynch v. Kirby, 74 Misc. 266, 131·N.Y.S. 680. However, where the class defamed is so small that immediate identification of each member thereof reasonably follows from the statement (Weston v. Commercial Advertiser Ass'n, 184 N.Y. 479, 77 N.E. 660; Bornmann v. Star Co., 174 N.Y. 212, 66 N.E. 723; Gross v. Cantor, 270 N.Y. 93, 200 N.E. 592), a right of action is usually given, or at least the applicability of the statement to the plaintiff is left for the jury to decide.

The crucial words here refer to the "army of racketeers who are sweeping the country, taking advantage of the circumstances by selling the unwary car owner or battery dealer some fancy packaged flour, sand, Epsom Salts, or just any old white powder as a panacea for all battery troubles." The plaintiff claims that the

defendant had it and its product in mind when this statement was made.

No indication of the size of the class is found in the complaint, but I take it that an "army" is a large one. However, if the class is a small one, as the plaintiff would have it, the expression "army of racketeers" would seem inappropriate and poorly aimed to counteract the alleged evil to which the statements are directed, and obviously could not be conceived of as pointed toward one of a small class of which plaintiff would be a member. A reading of the alleged libellous matter clearly indicates that it has a nationwide aspect and application.

■ The matter complained of contained no libel of plaintiff on its face, nor is there the least suggestion in these articles that the plaintiff and its product were the object of the words. If it related to him it was only by reason of extrinsic facts and circumstances and these are not pleaded; and if it is not apparent from.a fair reading of them that the statements concerned the plaintiff, a cause of action may not be read into them by the claim that the plaintiff was the intended party, or by extending their meaning through innuendo. Hays v. American Defense Society, 252 N.Y. 266, 169 N.E. 380; Corr v. Sun Printing & Publishing Ass'n, 177 N.Y. 131, 69 N.E. 288; Feely v. Vitagraph Co. of America, supra.

The other words, including "some fancy packaged flour, sand, Epsom Salts, or just any old white powder", add nothing to identify the plaintiff.

■ As I see it the alleged defamatory statements here constitute a nonactionable class libel. Plaintiff in no way has been identified with it.

"An action for defamation lies only in case the defendant has published the matter 'of and concerning the plaintiff.' Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 64, 126 N.E. 260, 262, 10 A.L.R. 662. Consequently an impersonal reproach of an indeterminate class is not actionable. Eastwood v. Holmes, 1 F. & F. 347." See Gross v. Cantor, supra [270 N.Y. 93, 200 N.E. 593].

I hold that the complaint is insufficient and must be dismissed.

Submit order.