**Hilda ROBINSON and Leon Krakover, Plaintiffs,**

v.

**GUY GANNETT PUBLISHING COMPANY and Joseph P. Youngs, Jr., Defendants.**

**Civ. No. 9–143.**

United States District Court
D. Maine, S. D.
March 17, 1969.

David A. Nichols, Camden, Me., Andrew M. Knowlton, Philadelphia, Pa., for plaintiffs.

Edward J. Berman, Sidney W. Wernick, and Theodore H. Kurtz, Portland, Me., Leon V. Walker and Courtland D. Perry, Asst. Attys. Gen., Augusta, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a diversity action to recover compensatory and exemplary damages for the alleged defamation of the plaintiffs by the publication in the Portland (Maine) Evening Express on February 19, 1965 of a certain article and accompanying photograph. The case has been tried to the Court without a jury, and the following opinion contains the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52 (a).

The relevant facts may be briefly stated. The article in question, which ap-

peared on page 13 of the newspaper under the byline of Waldo E. Pray, Staff Reporter, read as follows:

## LAW REQUESTED TO CURB DUPING OF MAINE DEAF PERSONS

Falmouth—Crooks are taking advantage of deaf persons in Maine.

Supt. Joseph B. Youngs of Gov. Baxter State School for the Deaf here, is asking the 102nd Legislature to do something about it.

A bill patterned after a Wisconsin law and sponsored by State Rep. Catherine H. Carswell, D-Portland, would make it illegal to sell or use finger alphabet cards as an inducement to purchase merchandise.

Young says organized crime syndicates have been recruiting deaf people to use these cards as sympathy inducers in peddling merchandise.

THE RACKETEERS milk their deaf salesmen of an exhorbitant [sic] share of the profits and sometimes force them into other unsavory occupations, according to Youngs.

He said a deaf Maine girl who formerly attended the Baxter school was taken in by the racketeers and eventually found herself in white slavery in Puerto Rico.

He said a male student at the school was promised a job as an apprentice printer in New York and his parents were induced to pay $50 as the fee for procuring him the job.

The promise of a job proved to be a gimmick to get him to New York, where he was asked to peddle the alphabet cards. Fortunately, the boy broke away in time and returned to Maine, Youngs said.

IN ADDITION to curbing racketeers from taking advantage of deaf people, Youngs hopes the law will discourage the deaf from using their handicap as an excuse for begging.

With the training that's available for the deaf there's no excuse for begging, Youngs said. Those who resort to begging cast a bad reflection on the majority of deaf people who are hardworking and conscientious, he said.

Some deaf persons sell only the finger alphabet card. Others use the card as an introductory pitch to get people to buy other things such as cheap pens, watch fobs and key chains.

Youngs said there's enough of this going on in Maine to alarm persons concerned about the welfare of the deaf.

THE PROPOSED LAW would discourage the practice in Maine but wouldn't be of much help in reaching the racketeers behind it, Youngs said.

The syndicates are well organized and careful to keep just within the law and if they slip up, they always have expert legal assistance to extricate them, Youngs said.

He said the syndicates try to procure lists of graduates from deaf schools and use the numerous magazines published for the deaf for names of prospects.

YOUNGS TESTIFIED on the problem before the Kefauver Crime Probe committee several years ago. A lot of the syndicate people remember him from his appearance before the committee and give him a wide berth, he said.

This may be one of the reasons why their operations have been at a minimum in Maine, "although I have seen a couple of them around in the past year or two," he said.

THE BILL provides for fines of $25 to $100 and imprisonment up to 90 days for persons selling or using the alphabet cards or similar printed material as a means to induce sales.

"It won't solve the problem but it will give authorities something to work with in keeping it at a minimum," Youngs said.

The article was illustrated by a photograph depicting various small articles and printed materials reportedly sold by deaf persons.[1] On one of the items there appeared a small photograph of plaintiff Krakover's face. As reproduced in the newspaper photograph, however, the likeness was reduced to one-eighth of an inch in size and was not distinguishable as plaintiff's face. Beneath the photograph appeared a facsimile reproduction of a finger alphabet card and the following caption:

### DUPING THE DEAF

At the top are some of the worthless items that *racketeers induce some deaf persons to sell.* At bottom are the two sides of so-called alphabet card used as an introductory pitch for a handout.

At the time of the publication plaintiffs Hilda Robinson and Leon Krakover [2] were partners in the business of designing small articles and printed materials and supplying them to deaf and mute individuals who sold these items throughout the United States, including the State of Maine. Defendant Guy Gannett Publishing Company is the publisher of the Portland Evening Express. Defendant Joseph P. Youngs, Jr., is the superintendent of the Governor Baxter School for the Deaf in Falmouth, Maine. Defendant Youngs supplied the bulk of the information on which the article in question was based.

It was stipulated at the trial that all of the items depicted in the photograph (but not the alphabet card) were distributed by plaintiffs. The evidence was also undisputed that there were many other distributors of similar items for sale by deaf persons doing business throughout the United States and in New England at the time.[3] There was no evidence that either of the defendants, or Mr. Pray, was aware of the plaintiffs' existence prior to the publication of the article, or that specific reference to plaintiffs was intended by them.

▄▄ Under established principles, plaintiffs have plainly failed to establish a cause of action for defamation. It is apparent that if the article sufficiently referred to plaintiffs, it would be libelous. However, under the law of Maine, in order for written or spoken language, otherwise defamatory, to be actionable, it must be "of, or concerning, the plaintiff." Judkins v. Buckland, 149 Me. 59, 65, 98 A.2d 538 (1953); Hanna v. Singer, 97 Me. 128, 53 A. 991 (1908); Bearce v. Bass, 88 Me. 521, 544, 34 A. 411 (1896). Certain other principles, on

---

1. These items, which were introduced into evidence at the trial, include a ball point pen with *finger alphabet symbols* printed on it; a key chain and medallion with screw driver attachments; a perpetual calendar wheel; and two "booklets about amazing deaf facts."

2. Eastern Deaf-Mute Sales Co., Inc., was originally named as a plaintiff. During the course of the trial the parties stipulated for dismissal of the action of that plaintiff.

3. On direct examination of plaintiff Krakover, the following exchange took place:

    Q  Now forgetting about your particular items, are there other distributors of novelty items for sale by deaf persons in New England?
    A  There are others, yes, rivals.
    *      *      *      *      *
    Q  Is there one or more who was doing business in New England in 1965?
    A  There are many.
    Q  Doing business in New England?
    A  There's many, yes.
    This subject was further developed on cross-examination as follows:
    Q  Now you said that you have competitors or rivals, I think you said, in this area, is that correct?
    A  Thousands of them.
    Q  Thousands of them, all over the United States?
    A  Yes.

which the Maine Court has not spoken, are equally clear. Although it is not necessary that the publication on its face mention the plaintiff by name, if its application to the plaintiff depends upon extrinsic circumstances, he must show that it was actually understood as referring to him. Restatement of Torts § 564 (1938); Prosser, The Law of Torts, 767 (3d ed. 1964). In this respect, the test is neither the intent of the author nor the recognition of the plaintiff himself that the article is about him, but rather the reasonable understanding of the recipient of the communication. *Id.*

Tested by these principles, plaintiffs' claim must fail. Plaintiffs have offered no proof that any person who read the article and saw the picture understood that the article referred to plaintiffs or identified the items in the picture as plaintiffs' products. Nor did anything in the text of the article or in the photograph narrow its application to the plaintiffs, either directly, by inference, or by a process of elimination. Compare Judkins v. Buckland, *supra*, with Brown v. Journal Newspaper Co., 219 Mass. 486, 107 N.E. 358 (1914). No names were mentioned, and although admittedly plaintiffs' products were depicted in the photograph, there is no indication that they were distinctive in any respect or that any reader, except perhaps plaintiffs themselves, would recognize that the items were plaintiffs. Finally, the photographic likeness of plaintiff Krakover's face was, as already noted, too small to be identifiable.

As an alternate theory, plaintiffs contend that the article libels the entire group or class of persons using deaf people to sell novelties in the State of Maine and elsewhere, and that, as members of that group or class, they may recover. However, even if the article may be so understood, plaintiffs' proof is insufficient. It is well settled that when defamatory matter concerns a group or class of which the plaintiff is a member, he must show either that the group or class is so small that the statements may reasonably be understood to refer to each member, or else that the circumstances are such that the material may reasonably be understood to refer to him personally. Restatement (Second) of Torts § 564A (Tent.Draft No. 11, 1965); Prosser, *supra* at 767–768. By plaintiff Krakover's own testimony there were many other distributors of these items doing business in New England at the time. Even discounting somewhat his unlikely estimate that there were "thousands" of such persons,[4] there is no other evidence in the record either that the group was so small that statements libeling it necessarily defamed the plaintiffs personally or that the circumstances were such that the article might reasonably be understood to refer to plaintiffs. The law is clear that absent such a showing, defamation of a class or group does not form the basis of a cause of action on the part of an individual member of the group. *See, e. g.,* Golden North Airways, Inc. v. Tanana Publishing Co., Inc., 218 F.2d 612, 15 Alaska 303 (9th Cir. 1954); Service Parking Corp. v. Washington Times Co., 67 App.D.C. 351, 92 F.2d 502 (1937); Riss & Co. v. Ass'n of American Railroads, 187 F.Supp. 323 (D. D.C.1960); Neiman-Marcus v. Lait, 13 F.R.D. 311 (S.D.N.Y.1952); Watts-Wagner Co., Inc. v. General Motors Corp., 64 F.Supp. 506 (S.D.N.Y.1945); *see also* Brewer v. Hearst Publishing Co., 185 F.2d 846 (7th Cir. 1950).

Under either theory of recovery, then, plaintiffs have failed to sustain their burden. They have not shown that any reader reasonably understood, or reasonably could have understood, that the article and photograph complained of were "of, or concerning" them. Nor have they shown that the group defamation, if such it were, libeled them personally because

4. See n. 3, *supra.*

of the limited size of the class or because of any attendant circumstances. Accordingly, judgment will be entered for the defendants against the plaintiffs dismissing the action, with prejudice and without costs.[5]

It is so ordered.

---

5. In view of this conclusion, the Court does not reach defendants' alternate contention that the published article concerned a matter of public interest and cannot constitute the basis for actionable libel under the First and Fourteenth Amendments to the Constitution of the United States in the absence of proof of "actual malice," in accordance with the standards set forth by the Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) and Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). See United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., 404 F.2d 706 (9th Cir. 1968), cert. denied (U. S. March 24, 1969), 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454; Time, Inc. v. McLaney, 406 F.2d 565 (5th Cir. filed Jan. 3, 1969); see also All Diet Foods Distributors, Inc. v. Time, Inc., 56 Misc.2d 821, 290 N.Y.S. 2d 445 (Sup.Ct.1967).