BEN S. GROSS, Appellant, *v.* EDDIE CANTOR, Defendant, and RADIO GUIDE, INC., et al., Respondents.

(Argued January 14, 1936; decided March 3, 1936.)

*Benjamin C. Ribman* for appellant. It cannot be said, as a matter of law, that the language of the article was employed in criticism of a class as a class, and it had no personal application or significance. The court should have held that plaintiff was entitled to have a jury pass on the question as to whether the article applied to him.

(*Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479; *Ryckman* v. *Delevan*, 25 Wend. 186; *Bornmann* v. *Star Co.*, 174 N. Y. 212; *Van Ingen* v. *Mail & Express Pub. Co.*, 156 N. Y. 376; *Corr* v. *Sun Printing & Pub. Assn.*, 177 N. Y. 131; *Louisville Times Co.* v. *Stivers*, 66 S. W. Rep. [2d] 411; *Louisville Times Co.* v. *Emrich*, 66 S. W. Rep. [2d] 73; *Constitution Publishing Co.* v. *Leathers*, 172 S. E. Rep. 923.)

*Thomas E. McEntegart* for respondents. · The complaint does not state facts sufficient to constitute a cause of action. (*Eastwook* v. *Holmes*, 1 F. & F. 349; *Lynch* v. *Kirby*, 74 Misc. Rep. 266; *Ryckman* v. *Delevan*, 25 Wend. 186; *Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479; *Kloor* v. *New York Herald Co.*, 200 App. Div. 90.)

LOUGHRAN, J. The question presented by this appeal is whether the complaint is sufficient as the statement of a cause of action for a libel upon the individual plaintiff. He alleges that the moving defendants printed and circulated in a magazine called *Radio Guide* the following article:

" CANTOR BARES FEUD OF CRITICS.

" Eddie Cantor, hailed by many admirers as America's foremost comedian, has a pet feud. It involves all save one of the radio editors in New York City. Eddie carefully excludes this editor as being the only radio critic entitled to his job. Interest in the feud is intensified by the fact that Cantor does not name the man he excepts.

" At all the other radio editors and columnists of New York, the comedian hurls his lance of vitriolic criticism. It is a gesture of fearlessness. Few leaders in the entertainment world have the courage to attack the critics and the editors of the metropolis.

" Cantor has enlisted the aid of Radio Guide in presenting the facts of the feud to the public. He is eager to make especially clear his friendliness for all the radio editors outside New York.

" The story is told in a telegram sent by Cantor to Radio Guide. The telegram follows:

" ' Editor, Radio Guide: En route to California from New York several newspaper friends have asked me about the feud between the radio editors and myself.

" ' I have always had the friendliest relationship with the radio editors outside New York City. They have criticized my work but theirs was honest criticism with nothing personal behind it. I have a great respect for their sincerity and judgment.

" ' However, I shall continue to fight those New York radio editors who are experts at log rolling, who use their columns for delving into personalities that have nothing to do with radio and whose various rackets are a disgrace to the newspaper profession.

" ' There is but one person writing on radio in New York City who has the necessary background, dignity and honesty of purpose.

" ' Would appreciate your printing this in Radio Guide where it may be seen by radio editors throughout the country. Best wishes.

" ' EDDIE CANTOR.' "

By way of inducement and *colloquia*, the pleader states these extrinsic facts: There is a class of newspaper writers known as radio editors who review radio performances and programs; the leading newspapers in the city of New York employ about twelve radio editors; in the public mind this group includes the plaintiff; prior to the publication, the defendant Cantor had publicly specified the " one person " to whom he referred; the plaintiff is not that person; knowing all this, the moving defendants aimed the article especially at the plaintiff and its defamatory content was commonly understood as an imputation against him personally. An innuendo follows, pointing to the plaintiff as a particular person to whom the words in fact related.

We think the allegations are enough to raise the issue whether the plaintiff individually was held up to contempt personal to him.

An action for defamation lies only in case the defendant has published the matter " of and concerning the plaintiff." (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58, 64.) Consequently an impersonal reproach of an indeterminate class is not actionable. (*Eastwood* v. *Holmes*, 1 F. & F. 347.) " But if the words may by any reasonable application, import a charge against several individuals, under some general description or general name, the plaintiff has the right to go on to trial, and it is for the jury to decide, whether the charge has the personal application averred by the plaintiff." (*Ryckman* v. *Delavan*, 25 Wend. 186, 202. So, *Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479; *International Text-Book Co.* v. *Leader Printing Co.*, 189 Fed. Rep. 86; *Wakley* v. *Healey*, 7 C. B. 591. Cf. *LeFanu* v. *Malcomson*, 1 H. L. Cas. 637.)

We cannot go beyond the face of this complaint. It does not there appear that the publication was so scattered a generality or described so large a class as such that no one could have been personally injured by it. Perhaps the plaintiff will be able to satisfy a jury of the reality of his position that the article was directed at him as an individual and did not miss the mark.

Since the plaintiff did not plead a *colloquium* in the form authorized by rule 96 of the Rules of Civil Practice, we are not called on to decide whether such a general allegation would here have been sufficient.

The judgments should be reversed, with costs in all courts, and the motion to dismiss the complaint denied.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur.

Judgments reversed, etc.