Samuel C. Coleman, J.
1. The first cause of action, to enjoin a conspiracy to destroy (by libel and slander) the reputation and standing of the plaintiffs — a physician (now deceased) and a hospital, is dismissed. The change in circumstances after the time of the acts complained of and during the pendency of the action, coupled with the availability of a legal remedy for the granting of the material relief demanded, calls for this conclusion. One of the original plaintiffs — Dr. Wolf, sole proprietor of the hospital — died while the action was at issue; the action has continued in the name of his estate and the estate no longer has a proprietary interest in the hospital. The hospital itself while, of course, the same legal entity as before, is now “ owned ” — as that word is used in a popular sense with reference to a corporation — by eight physicians who had no proprietary interest in the hospital at the time of the acts in question, and who purchased their respective interests during the pendency of this action, knowing it was pending, and knowing at least some of the facts out of which the action arises. The alleged slanderous and libelous acts ceased when the action was started and one can hardly say now — a year and a half later, and in an entirely different framework — that those acts will be renewed. In such circumstances, the issuance of an injunction is not called for (cf. Electrolux Corp. v. Val-Worth, Inc., 6 N Y 2d 556, 565; 1130 President St. Corp. v. Bolton Realty Corp., 300 N. Y. 63, 68, 69).
2. There is no defense to the causes of action in slander. The conduct of Mrs. Gold is indefensible. There is no doubt that she harbored ill-will toward Dr. Wolf and the statements she made to Dr. Stiefel about Dr. Wolf and the management of the hospital were shocking. If true, they called for the most drastic condemnation of Dr. Wolf and the hospital; if untrue, equally drastic condemnation of the slanderer. The statements attacked the professional standards of the hospital and its medical staff; *550 impugned the character of its head, from a professional and moral standpoint (it is hard to separate one from the other), charged financial irregularities;— they could not have more debased the plaintiffs than they did. There is no doubt that they were intended to refer to Dr. Wolf and to the hospital and that they were so understood (cf. Harwood Pharmacal Co. v. National Broadcasting Co., 9 N Y 2d 460 ; Gross v. Cantor, 270 N. Y. 93). They were, if formal words are necessary, slanderous per se — to Dr. Wolf and to the hospital — damaging them in their professional capacity and in their “ business.”
Were these statements true ? Not the slightest effort was made by Mrs. Gold to show that they were true. In her answer, she denied making the statements (a singularly feckless denial); adding, as one may in an answer in defamation, at one’s peril, that the statements ‘‘ are true and were spoken without malice ’ ’; and repeating them substantially as they were set forth in the complaint. Neither she nor her husband took the stand and at the end of the trial the plea of justification by truth was withdrawn. The statements were not true and they were spoken with malice.
3. The causes of action for libel are troubling, as the slander action is not. The letters (five) which the plaintiffs attribute to the defendants are as libelous as Mrs. Gold’s statements were slanderous. They deal with the same matters — the letters here and there repeating and sometimes amplifying, sometimes particularizing the defamatory statements. But did the defendants write (typewrite) the letters? In their answer, they deny responsibility for them, although again asserting that the contents were true, repeating the contents at length. There is every reason to say that any one making the statements made to Dr. Stiefel, as Mrs. Gold did, would be predisposed to write the letters and to send them to the persons who received them. But that is not enough. I have said that the defendants did not testify, and throughout the history of the litigation they have assiduously avoided being put in a position where they would be called upon to say categorically that the letters were theirs, even to the extent of pleading a supposed constitutional privilege against testifying on the subject.
We are thrown back upon the letters and the other circumstances of link between plaintiffs and defendants. There were two handwriting experts, one for each side. They agreed that the letters were written on the same typewriting machine; the expert for the plaintiffs added that they were written by the same person; the defendants’ expert could not express an opinion on this point. There was no testimony that the typewriter belonged *551 to the defendants or that they had access to it. There were two standard specimens: a typed letter signed by Mrs. Gold and an envelope in her handwriting. From these two, the plaintiffs’ expert believes that the letters in question were written by Mrs. Gold. He referred to peculiarities in punctuation, the unusual use of a period, of a dash, for instance, and to peculiarities in capitalization. More importantly, however, he insisted that the use of the graph “ c-o ” (in care of) in place of the customary “ c/o ” was as revealing as would be a finger print and that it pointed unmistakably to Mrs. Gold as the author of the letters. The defendants’ expert attached no particular significance to the other peculiarities and as to the use of “ c-o ”, while he conceded that it was rare, he could not regard that as sufficient basis for any conclusion. I accepted the letters, prima facie, and I repeat, there was no testimony from the defendants. Notwithstanding that I do not find, I cannot find as a fact that the letters were the defendants. It is not enough to invoke technical procedural rules and to say that a prima facie case having been made out (it should be borne in mind that there was no jury), the ultimate fact to be established must be taken as having been established merely because the defendants ‘ ‘ who are in a position to come forward ” failed to do so. I put aside the question of the defendants’ supposed privilege against testifying and any consequent inability to draw an unfavorable inference from their failure to testify. I am to be satisfied that they wrote the letters and I am not so satisfied; the testimony against them is too slender.
There is, of course, an aura of wrongdoing on the defendants’ part; but that again is not enough. HI will and animosity had for years existed between the two physicians and their respective wives; certainly Dr. Gold had suggested to at least one physician connected with the hospital a dastardly scheme to destroy its financial standing so that he, Dr. Gold, might be able to repurchase the hospital at a depressed value. The plaintiffs are not obliged to show that no one else had feelings of rancor against them. And circumstantial evidence in a given case may suffice. But such evidence should circumscribe the area of probability within which what we can reasonably call fact can be located and should not leave us with centrifugal impressions which fly about. I find myself surrounded only with such impressions and they do not satisfy me as to the source of the letters.
The causes of action in libel are dismissed.
4. I come to the question of damages. The slander was directed to the place where it was realized it would do great harm — the Blue Cross; and it was intended to reach beyond *552 the ears of Dr. Stiefel as it did, including the ears of Dr. Wolf. It is impossible to separate the distress suffered by Dr. Wolf by the slander from that caused by the letters, no matter by whom those were sent. But he did suffer. Direct financial damage is of no moment; he suffered as a physician and as the head of a hospital. I award Dr. Wolf’s estate $25,000. If Dr. Wolf had lived he clearly would have been entitled to an award of punitive damages; but none can be awarded his estate (Decedent Estate Law, § 119). The hospital too was damaged in its corporate and professional standing. The slander was offered as the truth, was repeated and then withdrawn. I award it $15,000 as compensatory damages. There will also be an award of $20,000 as punitive damages.
The application for an award of costs because of the defendants’ failure to make certain admissions pursuant to a notice to admit (Civ. Prac. Act, § 322) is denied. The defendants had been requested to admit, in effect, that the letters in question were theirs. But as plaintiffs did not prove the letters were the defendants, the provision does not apply and the question of its applicability in other respects is academic.
Judgment then will be entered as follows:
The first cause of action is dismissed; the plaintiff Wolf (his estate) will have judgment against Anna Gold for $25,000 on the second cause of action. That cause of action is dismissed as to the defendant Jacob Gold; the third, fourth, fifth, sixth and seventh are dismissed. There will be judgment for the plaintiff hospital on the eighth cause of action for $35,000 against Anna Gold. That cause of action is dismissed as to the defendant Jacob Gold; the ninth, tenth, eleventh, twelfth and thirteenth causes of action are dismissed.