382

BEE PUBLICATIONS, INC., et al., Respondents, v CHEEKTOWAGA TIMES, INC., et al., Appellants.

Fourth Department, March 1, 1985

**APPEARANCES OF COUNSEL**

*Magavern & Magavern* (*Michael Beilewech* of counsel), for appellants.

*Stamm, Keefe & Murray* (*Gregory Stamm* of counsel), for respondents.

**OPINION OF THE COURT**

HANCOCK, JR., J. P.

To prevail in a libel action against media defendants, a plaintiff who qualifies as a public figure (*see, Curtis Pub. Co. v Butts,* 388 US 130) must show: (1) that the allegedly defamatory words were " 'of and concerning' " him (*see, Gross v Cantor,* 270 NY 93, 96); (2) that they were likely to be understood as

defamatory by the ordinary person (*see, James v Gannett Co.,* 40 NY2d 415); (3) that the words were false (*see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, *cert denied* 434 US 969) and (4) that they were published with "actual malice" (*Rinaldi v Viking Penguin,* 52 NY2d 422). Special Term has granted partial summary judgment to plaintiffs against two of three defendants on the issue of liability. Contrary to plaintiffs' contentions on appeal, we find that the record presents an issue of fact for the jury on each of the foregoing points (*see,* CPLR 3212 [b]). Because there must be a reversal and a trial, we comment on some of the questions raised.

Plaintiffs, Bee Publications, Inc., the publisher of the *Cheektowaga Bee,* a local weekly newspaper, and George Measer, its president and majority shareholder, allege that they were defamed by a letter to the editor published on January 28, 1982 and February 4, 1982 in the *Cheektowaga Times,* a long-established local weekly published by defendant Cheektowaga Times, Inc. The letter, written by defendant Gemerek,[1] concerned the decision of the Cheektowaga Town Board to replace the *Times* with the *Bee* as the official paper for the publication of town notices for 1982. In his letter Gemerek stated in part:

"When a clear-cut mandate, based on a 3 to 1 subscription differential, is blatantly ignored, one searches for reasons for such an inexcusable violation of the representative voting process.

"While the real intent behind this sham can only be speculated, suspicion of kick backs, pay-offs and promises of future political endorsements immediately come to mind."

In an examination before trial, Measer testified that Bee Publications, Inc., a corporation based in Amherst, a neighboring town, had been in the publishing business for 25 years. It published eight newspapers in the suburban Buffalo area, including the *Bee,* a weekly serving Cheektowaga but having a considerably smaller circulation than the competing *Times.* Measer testified that his name appeared as publisher on the masthead of the *Bee,* that he had for years been active in the local affairs of Amherst, that he had held prominent positions in national publishers' associations and that his name and photograph had appeared in print "many, many times". Bee Publications, Inc., he said, was "synonymous [with] George Measer". In

---

1. The motion sought summary judgment against the media defendants only. On the question of whether the constitutional privilege would apply as well to Gemerek, a private individual, *see, Hutchinson v Proxmire* (443 US 111, 133, n 16) and *Pollnow v Poughkeepsie Newspapers* (107 AD2d 10).

December 1981, Measer by letter requested the Cheektowaga Town Board to designate the *Bee* as the town paper for 1982.

From the examination before trial testimony of defendant Allis, now deceased and formerly editor of the *Cheektowaga Times,* it appears that the *Times* had published the town notices for 10 or 15 years. According to Allis, the *Times* received a number of letters from readers protesting the Town Board's action in designating the *Bee* which, he said, had occasioned considerable opposition including a petition campaign supporting redesignation of the *Times.* One of the letters was from Gemerek. Allis ran it twice: once on page one with the heading, "Town Board Blasted for Ousting Times", and once on the editorial page. As of the time of publication, Allis conceded, he had no evidence that plaintiffs had engaged in kickbacks, payoffs or promises of future political indorsements and he "doubt[ed]" that they had. In contradictory testimony he later said: "I wouldn't say that I doubted it at all. I had no opinion on the matter * * * I said I had no conclusions on the matter whatsoever." He said that by publishing Gemerek's letter he did not "vouch" for its truth and considered it to be "[the] man's own opinion".

Special Term, in granting plaintiffs' motion for summary judgment on the issue of liability against defendants Allis and Cheektowaga Times, Inc., held that "[t]here is no doubt that the defamatory letter to the editor in question referred to the plaintiffs" and that defendant Allis' admissions that "he had no knowledge of kickbacks or payoffs" and that he "doubted that there were kickbacks or payoffs" were sufficient to establish malice as a matter of law. In a supplemental decision the court held that the statements in issue were libelous per se.

## I

For there to be a recovery in libel it must be established that the defamation was " 'of and concerning the plaintiff' " (*Gross v Cantor,* 270 NY 93, 96, *supra; see,* 34 NY Jur, Libel and Slander, § 55; Prosser and Keeton, Torts § 111, at 783 [5th ed 1984]). The burden, it has been held, " 'is not a light one' " (*Geisler v Petrocelli,* 616 F2d 636, 639, quoting *Fetler v Houghton Mifflin Co.,* 364 F2d 650, 653; *Handelman v Hustler Mag.,* 469 F Supp 1048, 1050). A plaintiff need not, of course, be named in the publication but, if, as is the case here, he is not, he must sustain the burden of pleading and proving that the defamatory meaning attached to him (Prosser and Keeton, Torts § 111, at 783 [5th ed 1984]). The reference to a plaintiff may be indirect and may be shown by extrinsic facts, as, for example, in this case by

establishing plaintiffs' associations with the *Cheektowaga Bee* (*see, Geisler v Petrocelli, supra,* p 640; *Brayton v Crowell-Collier Pub. Co.,* 205 F2d 644, 645). But where extrinsic facts are relied on to prove the reference to a plaintiff, he must show that the conclusion that the publication refers to him is reasonable and that the extrinsic facts upon which that conclusion is based were known to those who read or heard the publication (*see, Geisler v Petrocelli, supra,* p 639; Prosser and Keeton, Torts § 111, at 783 [5th ed 1984]).

Under the usual rule in cases where a plaintiff is not named in a publication it is for the jury to determine whether the "of and concerning" requirement of the cause of action has been met (*see, Geisler v Petrocelli, supra; Fetler v Houghton Mifflin Co., supra; Brayton v Crowell-Collier Pub. Co., supra; Handelman v Hustler Mag., supra; Gross v Cantor, supra; Michaels v Gannett Co.,* 10 AD2d 417, 419; *Bridgwood v Newspaper PM,* 276 App Div 858). There is no reason to vary from the rule here.

Defendants in their answer have specifically denied that the publication was "of and concerning" plaintiffs and allege in an opposing affidavit by their attorney that "the relationship[s] between Bee Publications, Inc., and George J. Measer, and the Cheektowaga Bee [were] entirely unknown to the residents of the Town of Cheektowaga". That plaintiff Measer, in his moving affidavit and in his testimony, avers that he is widely known "in his capacity as president of plaintiff Bee Publications, Inc." and has "come to be known synonymously with Bee Publications and its newspapers including the Cheektowaga Bee" does not conclusively establish that the readers of the letter to the editor were aware of these facts or that they would reasonably conclude therefrom that the letter referred to plaintiffs (*see,* Prosser and Keeton, Torts § 111, at 783 [5th ed 1984]). "To obtain summary judgment it is necessary that the movant establish his cause of action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form" (*Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067). Because plaintiffs have not met this required showing, it was not incumbent upon defendant to "go forward and submit evidence to raise a question of fact" (*Mulhauser v Wood,* 107 AD2d 1019; *see, Zuckerman v City of New York,* 49 NY2d 557, 562).

## II

We find a question of fact with respect to whether the words were defamatory. Defendants point out that the letter did not

assert as a fact that kickbacks, payoffs or promises of future political indorsements occurred but rather was couched in terms of speculation and suspicion. The rule is that initially, "[t]he court must decide whether there is a reasonable basis for drawing the [alleged] defamatory conclusion. If the contested statements are reasonably susceptible of a defamatory connotation, then 'it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.' (*Mencher v Chesley*, 297 NY 94, 100)" (*James v Gannett Co.*, 40 NY2d 415, 419, *supra; see, Silsdorf v Levine*, 59 NY2d 8, 12-13, *cert denied* __ US __, 104 S Ct 109). Here the court in its decision has exceeded its limited role of deciding "whether there is a reasonable basis for drawing the [alleged] defamatory conclusion" (*James v Gannett Co., supra*, p 419) and has decided as well how the words were " 'likely to be understood' ". This question is for the jury to determine.

### III

It is now settled that in cases involving the constitutional privilege the plaintiff has the burden of proving the falsity of the publication (*see, Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 380, *supra*).[2] The only proof offered to establish the negative proposition (i.e., that plaintiffs were not implicated in kickbacks or other illegalities) was the affidavit and testimony of plaintiff Measer that he personally was not involved. The record contains no similar proof with respect to the corporate plaintiff and no affidavits or testimony from others connected with Bee Publications, Inc., or from Town Board members or other town officials. Whether in this case plaintiffs could with additional affidavits or pretrial testimony have sufficiently established falsity so as to cast upon the defendants the burden of coming forward with evidentiary facts (*see,* CPLR 3212 [b]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067) we need not decide. It is clear that plaintiffs have not done so here. If the jury concludes that the publication is "of and con-

2. The *Rinaldi* court explained: "At common law, the libelous statement was presumed to be false and the defendant carried the burden of pleading and proving, in defense, that the statement was true * * * [T]he burden is now on the libel plaintiff to establish the falsity of the libel. (*Cox Broadcasting Corp. v Cohn*, 420 US 469, 490.) This requirement follows naturally from the actual malice standard. Before knowing falsity or reckless disregard for truth can be established, the plaintiff must establish that the statement was, in fact, false" (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379-380; *see,* 85 ALR2d 460, § 4, at 465-69; Prosser and Keeton, Torts § 116 [5th ed 1984]; Restatement [Second] of Torts §§ 581A, 613).

cerning plaintiffs" and is likely to be understood as defamatory, it must decide also whether it is false.

## IV

Special Term correctly determined that for purposes of the publication in issue plaintiffs are "public figures" (*see, Hutchinson v Proxmire,* 443 US 111, 133-136; *Gertz v Robert Welch, Inc.,* 418 US 323, 345) and that to recover they must establish that the statement was made with "actual malice" (*see, New York Times Co. v Sullivan,* 376 US 254) rather than with "gross irresponsibility" (*see, Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196). Given Measer's own claims in his testimony that he is widely known in the Cheektowaga area and the fact that he and his corporation, by publishing the paper in Cheektowaga and applying to be designated as the town paper, have thrust themselves into a public controversy, there can be little question that "actual malice" under *New York Times* is the applicable standard of fault (*see generally, Wolston v Readers Digest Assn.,* 443 US 157, 164-168; *Hutchinson v Proxmire, supra,* pp 133-136; *Gertz v Robert Welch, Inc., supra,* p 345; *James v Gannett Co.,* 40 NY2d 415, 422, *supra*). Indeed, plaintiffs at Special Term and on appeal have not contested the point.

We cannot agree, however, that plaintiffs have proven as a matter of law (*see,* CPLR 3212 [b]) "with 'convincing clarity'" (*Rinaldi v Viking Penguin,* 52 NY2d 422, 436, *supra*) that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not" (*New York Times Co. v Sullivan, supra,* p 280). Since "'[t]he proof of "actual malice" calls a defendant's state of mind into question', such a case 'does not readily lend itself to summary disposition'" (*Rinaldi v Viking Penguin, supra,* p 438, quoting *Hutchinson v Proxmire, supra,* p 120, n 9). At issue is whether defendants here, who published a letter written by another, possessed a "high degree of awareness of [its] probable falsity" (*Garrison v Louisiana,* 379 US 64, 74). The focus is on defendants' attitude toward the truth or falsity of the letter, i.e., whether they "had or should have had serious doubt as to the truth of the publication * * * [or whether] there were obvious reasons to doubt [its] veracity" (*James v Gannett Co., supra,* p 424, citing *St. Amant v Thompson,* 390 US 727, 732, and *Trails West v Wolff,* 32 NY2d 207, 219; see, *Bose Corp. v Consumers Union,* 466 US __, 80 L Ed 2d 502, 512-513). The fact that Allis had no evidence to indicate that the statement was true and his conflicting testimony as to whether at the time of publication he "doubted" whether it was true are, without more, insufficient to establish actual malice

"with convincing clarity" (*Rinaldi v Viking Penguin, supra,* p 436) as a matter of law (*see,* CPLR 3212 [b]).

In considering the appropriateness of granting summary judgment to plaintiff in a libel action, we note that " '[i]n areas of doubt and conflicting considerations, it is thought better to err on the side of free speech' " (*Rinaldi v Holt, Rinehart & Winston, supra,* pp 384-385, quoting *Hotchner v Castillo-Puche,* 551 F2d 910, 913).

Accordingly, the order should be reversed and the motion denied.

DOERR, DENMAN, GREEN and O'DONNELL, JJ., concur.

Order unanimously reversed, on the law, with costs, and motion denied.