================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 131
Three Amigos SJL Rest., Inc.,
Doing Business as The Cheetah
Club, et al.,
                Plaintiffs,

Dominica O'Neill, et al.,
                Appellants,
           v.
CBS News Inc., et al.,
                Respondents.


           Rex Whitehorn, for appellants.
           Jay Ward Brown, for respondents.


PIGOTT, J.:

           The issue in this defamation case is whether certain

statements made by defendants during a news broadcast were "of

and concerning" the plaintiffs.  The underlying events occurred

on November 30, 2011, when federal authorities raided The Cheetah

Club (Cheetah's) in Manhattan.  Authorities believed Cheetah's

- 1 -

was one of several strip clubs involved in a trafficking ring in which members of the Bonanno and Gambino crime families illegally brought Russian and eastern European women into the United States.  The investigation was dubbed "Operation Dancing Brides" because the women were placed in sham marriages for citizenship purposes and forced to dance in New York City strip clubs.

CBS 2 News reported on the raid during a noon news broadcast.  While standing in front of The Cheetah Club, reporter Kathryn Brown stated

> "[S]ources tell CBS-2 News this bust is being dubbed 'Operations Dancing Brides,' and this strip club here, Cheetahs in Midtown, they say is at the center of the operation. Cheetahs advertises exotic women and the federals -- federal authorities say it is run by the mafia.  They have been here -- feds have been here all morning.  They conducted an early morning raid and they've been here for hours inside collecting evidence.  They are still inside right now.
>
> Meantime, earlier this morning, agents with the immigrations and customs enforcement arrested 25 men described as ringleaders of this entire operation.  Many of them they say are members of the Gambino and Bonanno crime families.  They say the men were involved in an elaborate operation to recruit women from Russia and eastern Europe into the U.S.  The ringleaders would then pay young men living here in the U.S. and upstate New York to marry these women on paper, then force the women to work as dancers in strip clubs across New York City, including Cheetahs. The men are charged with a variety of crimes including visa fraud, marriage fraud, and racketeering.  This is still a developing story and we will have much more on this tonight on CBS-2 News at 5:00."

The station followed up with the story during its evening

broadcast:

> "Federal authorities . . . say the club,
> Cheetahs, is one of several at the center of
> an underground immigration ring that
> stretches from Times Square to the heart of
> Russia. Investigators say Russian and Italian
> mobsters were working together in the
> elaborate scheme to bring Russian and eastern
> European women to the U.S., then funnel them
> to strip clubs to work as exotic dancers."

A summary of the same story was subsequently posted to the local CBS New York website, with a statement that Cheetah's was "one of several [strip clubs] at the center of an underground immigration ring . . . operated by colluding, organized crime entities that profited wildly through a combination of extortion and fraud."

Three Amigos SJL Restaurant Incorporated, doing business as The Cheetah Club, commenced a defamation action against CBS Broadcasting Incorporated (incorrectly sued as CBS News Incorporated) and several of its reporters for broadcasting and publishing allegedly false stories about the club's connection to the mafia.  Times Square Restaurant Group and Times Square Restaurant No. 1 Incorporated -- independent entities that provide management and talent services to the club -- were also plaintiffs in the action, along with Dominica O'Neill, Shawn Callahan and Philip Stein, who were employed by the two Times Square Restaurant entities and involved in The Cheetah Club's daily operations.  Plaintiffs alleged, as relevant here, that defendants' false statements about the club's involvement in Operation Dancing Brides, particularly the statement that

Cheetah's was "run by the mafia," subjected them to scorn and ridicule and adversely affected their ability to earn income.

Defendants moved to dismiss the claims by the two Times Square Restaurant entities and plaintiffs O'Neill, Callahan and Stein pursuant to CPLR 3211(a)(1) and (7), arguing that the news reports were not "of and concerning" them.[1]  Supreme Court granted defendants' motion with respect to those plaintiffs (2013 NY Slip Op 31081[U] [Sup Ct, New York County 2013]), and the Appellate Division affirmed, with two justices dissenting in part (132 AD3d 82 [1st Dept 2015]).  The individual plaintiffs, but not the Times Square Restaurant entities, appealed as of right pursuant to CPLR 5601(a), and we now affirm.

In order to establish a prima facie case of defamation, plaintiffs must show that the matter published is "of and concerning" them (Julian v Am. Bus. Consultants, Inc., 2 NY2d 1, 17 [1956]).  Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such (see id.; Prosser and Keeton, Torts § 111 at 783 [5th ed 1984]).  This burden is not a light one, and the question of whether an

---

[1] Defendants also moved to dismiss, on other grounds, certain claims made by Three Amigos SJL Restaurant Incorporated (doing business as The Cheetah Club), which is not a party to this appeal.  Defendants conceded, however, that the challenged statements were "of and concerning" The Cheetah Club.

allegedly defamatory statement could reasonably be interpreted to be "of and concerning" a particular plaintiff is a question of law for the courts to decide (see Springer v Viking Press, 60 NY2d 916, 917 [1983]; Carlucci v Poughkeepsie Newspapers, Inc., 57 NY2d 883, 885 [1982]).

Accepting as true each and every allegation in the complaint, the challenged statements were not of and concerning plaintiffs O'Neill, Callahan and Stein.  The news broadcast stated that Cheetah's was purportedly used by the mafia to carry out a larger trafficking scheme.  It did not mention any employees of the club or of the management and talent agencies that facilitate its daily operations, let alone the individual plaintiffs in these appeals, who were not identified or pictured in the report.  In context, the statement that Cheetah's was "run by the mafia" could not reasonably have been understood to mean that certain unnamed individuals who do not work for Cheetah's but oversee its food, beverage and talent services are members of organized crime (see Hays v Am. Defense Society, 252 NY 266, 269-270 [1929]; see also Carlucci, 57 NY2d at 885; Kirch v Liberty Media Corp., 449 F3d 388, 398 [2d Cir 2006] [holding, under New York law, that a defamatory statement directed at a corporation is not "of and concerning" unnamed employees of that corporation]).  Nor did the challenged statements describe a particular, specifically-defined group of individuals who "run" the Cheetah Club, such that the small group libel doctrine would

apply (see Gross v Cantor, 270 NY 93, 96 [1936] [allegedly defamatory statements directed at "all save one of the radio editors in New York City" was of and concerning plaintiff New York City radio editor]).  Contrary to the dissent's assertion, defendants' broadcast referred only to the club and failed to include sufficient particulars of identification in order to be actionable by an individual (cf. Brady v Ottaway newspapers, Inc., 84 AD2d 226, 233 [2d Dept 1981]).

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

Three Amigos SJL Restaurant, Inc., d/b/a The Cheetah Club, et al.
v CBS News Inc., et al.

No. 131

STEIN, J.(dissenting):

In my view, the courts below erred in granting defendants' motion to dismiss the complaint as asserted by plaintiffs Dominica O'Neill, Shawn Callahan, and Philip Stein on the ground that, as a matter of law, the challenged statement was not "of and concerning" those individual plaintiffs. I, therefore, respectfully dissent.

To assert a viable defamation claim, the allegedly defamatory statement must be susceptible to a reasonable interpretation by those "acquainted with the parties and the subject" as being "of and concerning" the plaintiff (Carlucci v Poughkeepsie Newspapers, 57 NY2d 883, 885 [1982]; see Springer v Viking Press, 60 NY2d 916, 917 [1983]; Julian v American Bus. Consultants, 2 NY2d 1, 7 [1956]). To be sure, "[t]he 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them" (Kirch v Liberty Media Corp., 449 F3d 388, 399-400 [2d Cir 2006]). However, the allegedly defamatory remark need not refer to a plaintiff by name and, in such cases, a plaintiff may demonstrate through "extrinsic facts" that the statement referred

- 1 -

to him or her (<u>Gross v Cantor</u>, 270 NY 93, 95 [1936]; <u>see</u>

<u>Chicherchia v Cleary</u>, 207 AD2d 855, 856 [2d Dept 1994]; <u>Bee</u>

<u>Publs. v Cheektowaga Times</u>, 107 AD2d 382, 385 [4th Dept 1985]).

Significantly, it is not necessary that the general public

understand the statement to concern the plaintiff, so long as

those familiar with the plaintiff would reasonably understand the

statement as referring to him or her (<u>see</u> <u>Carlucci</u>, 57 NY2d at

885; <u>Gilman v Spitzer</u>, 538 Fed Appx 45, 47 [2d Cir 2013]).

While application of the allegedly defamatory words to

the plaintiff need only be stated generally (<u>see</u> CPLR 3016 [a]),

courts may dismiss a complaint where, as a threshold matter of

law, the statement cannot be reasonably understood as being "of

and concerning" the plaintiff (<u>see</u> <u>e.g.</u> <u>Springer</u>, 60 NY2d at 917;

<u>Carlucci</u>, 57 NY2d at 885).  However, the question of whether a

statement is "of and concerning" the plaintiff is generally one

for the jury (<u>see</u> <u>Harwood Pharmacal Co. v National Broadcasting</u>

<u>Co.</u>, 9 NY2d 460, 462 [1961]; <u>Gross</u>, 270 NY at 96; <u>Bee Publs.</u>, 107

AD2d at 385; <u>Brady v Ottaway Newspapers</u>, 84 AD2d 226, 231 [2d

Dept 1981]; <u>Grinaldo v Meusburger</u>, 34 AD2d 586, 587 [3d Dept

1970], <u>appeal</u> <u>dismissed</u> 27 NY2d 598 [1970]; <u>Geisler v Petrocelli</u>,

616 F2d 636, 640 [2d Cir 1980]; 2A NY PJI3d 3:25, at 327).

Moreover, at the pleading stage, courts must accept the

allegations of the complaint as true and, reading the complaint

in conjunction with supplementing affidavits, a motion to dismiss

must be denied "[i]f, upon any reasonable view of the stated

facts, plaintiff would be entitled to recovery for defamation"
(Silsdorf v Levine, 59 NY2d 8, 12 [1983], cert denied 464 US 831
[1983]; see Davis v Boeheim, 24 NY3d 262, 268 [2014]; Rovello v
Orofino Realty Co., Inc., 40 NY2d 633, 635 [1976]).

As reflected in the majority opinion of this Court,
resolution of defendants' motion to dismiss in the instant case
depends upon whether defendants' broadcast -- and, in particular,
defendants' statement that the Cheetah Club was "run by the
mafia" -- can reasonably be understood as a statement "of and
concerning" the three individual plaintiffs.  According to the
complaint and O'Neill's affidavit, plaintiffs -- although
technically employees of other corporations -- provided the
Cheetah Club with management, promotional, talent, and booking
services, and also handled the day-to-day operations of the Club.
O'Neill averred that plaintiffs comprised a "small and exclusive
group of individuals who 'run' and manage" the Club, were present
at the Club on a daily basis managing and operating its affairs,
and were known by customers, vendors, entertainers, and city
officials as the persons who "ran" the Club.  In other words,
plaintiffs asserted that they were "the face of 'management' of
the Cheetah Club."  O'Neill also averred that, after defendants'
broadcast aired, she was contacted by numerous individuals who
believed -- as a result of the broadcast -- that she was a member
of the mafia and involved in human trafficking.

In my opinion, assuming the truth of these allegations,

defendants' statement that Cheetah's was "run by the mafia" could reasonably be interpreted by patrons, business associates, and other persons familiar with plaintiffs and their role at the Cheetah Club, as being "of and concerning" plaintiffs.  Contrary to the view of the majority of this Court, I agree with the dissenting Justices of the Appellate Division that, viewing the broadcast in its entirety, an average listener -- particularly someone familiar with plaintiffs and the establishment -- could very reasonably understand the challenged statement to mean that plaintiffs -- the individuals who owned or managed the day-to-day operations of the establishment -- were involved with a criminal organization.  One need not "strain" to discern this interpretation (Cohn v National Broadcasting Co., 50 NY2d 885, 887 [1980], cert denied 449 US 1022 [1988]), which is at least as plausible as the one adopted by the majority here -- namely, that defendants' remark meant only that the Club was "used by the mafia to carry out a larger trafficking scheme" (maj opn, at 5). Given that the statement is susceptible to more than one reasonable interpretation, at least one of which implicates plaintiffs as members of the mafia, its meaning should not be decided as a matter of law.  Rather, it is the province of the jury to determine whether the statement referred to plaintiffs (see Harwood, 9 NY2d at 462).

Defendants correctly point out that a statement is typically not found to be "of and concerning" an individual where

the plaintiff is merely an employee of an establishment about which allegedly defamatory statements have been made (see Carlucci, 57 NY2d at 885; Afftrex, Ltd. v General Elec. Co., 161 AD2d 855, 856 [3d Dept 1990]; Cohn v National Broadcasting Co., 67 AD2d 140, 146 [1st Dept 1979], affd 50 NY2d 885 [1980]). However, the statement at issue here is not directed solely at the Cheetah Club as a corporate entity. The statement that Cheetah's was "run by the mafia" could just as reasonably be interpreted as meaning that the individuals who ran the Club were associated with the mafia (see Harwood, 9 NY2d at 462). Furthermore, to the extent the majority relies on the fact that plaintiffs did not "own" Cheetah's and were technically employed by other corporations, such facts are irrelevant because knowledge of the corporate structure cannot be imputed, without any basis in the record, to the average patron or associate who observed or knew plaintiffs to seemingly be in control of, or running, the Club.

Defendants' argument that plaintiffs' defamation cause of action fails because the statement does not refer to a sufficiently small or identifiable group is also unpersuasive. "[A] plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff" (Diaz v NBC

Universal, Inc., 337 Fed Appx 94, 96 [2d Cir 2009]; see Gross,
270 NY at 96; Abramson v Pataki, 278 F3d 93, 102 [2d Cir 2002];
Restatement [Second] of Torts § 564A [1977]).  "The underlying
premise of this principle is that the larger the collectivity
named in the libel, the less likely it is that a reader would
understand it to refer to a particular individual" (Brady, 84
AD2d at 228).  However, where a group is sufficiently small, a
defamation claim may be viable because "reference to the
individual plaintiff reasonably follows from the statement and
the question of reference is left for the jury" (Brady, 84 AD2d
at 231; see Gross, 270 NY at 96).

Here, the "group" at issue is comprised of those
individuals who "run" the Cheetah Club.  According to plaintiffs'
allegations, there are only three individuals who managed or ran
Cheetah's and who would be identified by those familiar with the
Club as the individuals who "run" the Club.  This is undoubtedly
a sufficiently small group for a defamation claim to remain
viable (see Gross, 270 NY at 95 [all but one of 12 radio editors
in New York]; Brady, 84 AD2d at 240 [53 police officers
sufficiently small size]; compare Diaz, 337 Fed Appx at 96 [group
including several hundred individuals is too large to support a
defamation claim]).  Therefore, it "does not . . . appear that
the publication was so scattered a generality or described so
large a class . . . that no one could have been personally
injured by it" (Gross, 270 NY at 96).

Accordingly, I would reverse the Appellate Division
order insofar as it is appealed.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order, insofar as appealed from, affirmed, with costs.  Opinion
by Judge Pigott.  Judges Rivera, Abdus-Salaam, Fahey and Garcia
concur.  Judge Stein dissents in an opinion.  Chief Judge DiFiore
took no part.


Decided October 25, 2016