OPINION OF THE COURT
Pigott, J.
The issue in this defamation case is whether certain statements made by defendants during a news broadcast were “of and concerning” the plaintiffs. The underlying events occurred on November 30, 2011, when federal authorities raided the Cheetah Club (Cheetah’s) in Manhattan. Authorities believed Cheetah’s was one of several strip clubs involved in a trafficking ring in which members of the Bonanno and Gambino crime families illegally brought Russian and eastern European women into the United States. The investigation was dubbed “Operation Dancing Brides” because the women were placed in sham marriages for citizenship purposes and forced to dance in New York City strip clubs.
*85 CBS 2 News reported on the raid during a noon news broadcast. While standing in front of the Cheetah Club, reporter Kathryn Brown stated,
“[S]ources tell CBS-2 News this bust is being dubbed ‘Operation Dancing Brides’ and this strip club here, Cheetahs in Midtown, they say is at the center of the operation. Cheetahs advertises exotic women and the federáis—federal authorities say it is run by the mafia. They have been here—feds have been here all morning. They conducted an early morning raid and they’ve been here for hours inside collecting evidence. They are still inside right now.
“Meantime, earlier this morning, agents with the immigrations and customs enforcement arrested 25 men described as ringleaders of this entire operation. Many of them they say are members of the Gambino and Bonanno crime families. They say the men were involved in an elaborate operation to recruit women from Russia and eastern Europe into the U.S. The ringleaders would then pay young men living here in the U.S. and upstate New York to marry these women on paper, then force the women to work as dancers in strip clubs across New York City, including Cheetahs. The men are charged with a variety of crimes including visa fraud, marriage fraud, and racketeering.
“This is still a developing story and we will have much more on this tonight on CBS-2 News at 5:00.”
The station followed up with the story during its evening broadcast:
“Federal authorities . . . say the club, Cheetahs, is one of several at the center of an underground immigration ring that stretches from Times Square to the heart of Russia. Investigators say Russian and Italian mobsters were working together in the elaborate scheme to bring Russian and eastern European women to the U.S., then funnel them to strip clubs to work as exotic dancers.”
A summary of the same story was subsequently posted to the local CBS New York website, with a statement that Cheetah’s was “one of several [strip clubs] at the center of an underground *86 immigration ring . . . operated by colluding, organized crime entities that profited wildly through a combination of extortion and fraud.”
Three Amigos SJL Rest., Inc., doing business as the Cheetah Club, commenced a defamation action against CBS Broadcasting Inc. (incorrectly sued as CBS News, Inc.) and several of its reporters for broadcasting and publishing allegedly false stories about the club’s connection to the Mafia. Times Square Restaurant Group and Times Square Restaurant No. 1, Inc.— independent entities that provide management and talent services to the club—were also plaintiffs in the action, along with Dominica O’Neill, Shawn Callahan and Philip Stein, who were employed by the two Times Square Restaurant entities and involved in the Cheetah Club’s daily operations. Plaintiffs alleged, as relevant here, that defendants’ false statements about the club’s involvement in Operation Dancing Brides, particularly the statement that Cheetah’s was “run by the mafia,” subjected them to scorn and ridicule and adversely affected their ability to earn income.
Defendants moved to dismiss the claims by the two Times Square Restaurant entities and plaintiffs O’Neill, Callahan and Stein pursuant to CPLR 3211 (a) (1) and (7), arguing that the news reports were not “of and concerning” them.* Supreme Court granted defendants’ motion with respect to those plaintiffs (2013 NY Slip Op 31081[U] [Sup Ct, NY County 2013]), and the Appellate Division affirmed, with two Justices dissenting in part (132 AD3d 82 [1st Dept 2015]). The individual plaintiffs, but not the Times Square Restaurant entities, appealed as of right pursuant to CPLR 5601 (a), and we now affirm.
In order to establish a prima facie case of defamation, plaintiffs must show that the matter published is “of and concerning” them (Julian v American Bus. Consultants, 2 NY2d 1, 17 [1956]). Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such (see id.; Prosser & Keeton, Torts § 111 at 783 [5th ed 1984]). This burden is not a light one, and the question of *87 whether an allegedly defamatory statement could reasonably be interpreted to be “of and concerning” a particular plaintiff is a question of law for the courts to decide (see Springer v Viking Press, 60 NY2d 916, 917 [1983]; Carlucci v Poughkeepsie Newspapers, 57 NY2d 883, 885 [1982]).
Accepting as true each and every allegation in the complaint, the challenged statements were not of and concerning plaintiffs O’Neill, Callahan and Stein. The news broadcast stated that Cheetah’s was purportedly used by the Mafia to carry out a larger trafficking scheme. It did not mention any employees of the club or of the management and talent agencies that facilitate its daily operations, let alone the individual plaintiffs in these appeals, who were not identified or pictured in the report. In context, the statement that Cheetah’s was “run by the mafia” could not reasonably have been understood to mean that certain unnamed individuals who do not work for Cheetah’s but oversee its food, beverage and talent services are members of organized crime (see Hays v American Defense Socy., 252 NY 266, 269-270 [1929]; see also Carlucci, 57 NY2d at 885; Kirch v Liberty Media Corp., 449 F3d 388, 398 [2d Cir 2006] [holding, under New York law, that a defamatory statement directed at a corporation is not “of and concerning” unnamed employees of that corporation]). Nor did the challenged statements describe a particular, specifically-defined group of individuals who “run” the Cheetah Club, such that the small group libel doctrine would apply (see Gross v Cantor, 270 NY 93, 94, 96 [1936] [allegedly defamatory statements directed at “all save one of the radio editors in New York City” was of and concerning plaintiff New York City radio editor]). Contrary to the dissent’s assertion, defendants’ broadcast referred only to the club and failed to include sufficient particulars of identification in order to be actionable by an individual (cf. Brady v Ottaway Newspapers, 84 AD2d 226, 233 [2d Dept 1981]).
Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

 Defendants also moved to dismiss, on other grounds, certain claims made by Three Amigos SJL Rest., Inc. (doing business as the Cheetah Club), which is not a party to this appeal. Defendants conceded, however, that the challenged statements were “of and concerning” the Cheetah Club.