Stein, J.
(dissenting). In my view, the courts below erred in granting defendants’ motion to dismiss the complaint as asserted by plaintiffs Dominica O’Neill, Shawn Callahan, and Philip Stein on the ground that, as a matter of law, the challenged statement was not “of and concerning” those individual plaintiffs. I, therefore, respectfully dissent.
*88 To assert a viable defamation claim, the allegedly defamatory statement must be susceptible to a reasonable interpretation by those “acquainted with the parties and the subject” as being “of and concerning” the plaintiff (Carlucci v Poughkeepsie Newspapers, 57 NY2d 883, 885 [1982]; see Springer v Viking Press, 60 NY2d 916, 917 [1983]; Julian v American Bus. Consultants, 2 NY2d 1, 7 [1956]). To be sure, “[t]he ‘of and concerning’ requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them” (Kirch v Liberty Media Corp., 449 F3d 388, 399-400 [2d Cir 2006]). However, the allegedly defamatory remark need not refer to a plaintiff by name and, in such cases, a plaintiff may demonstrate through “extrinsic facts” that the statement referred to him or her (Gross v Cantor, 270 NY 93, 95 [1936]; see Chicherchia v Cleary, 207 AD2d 855, 856 [2d Dept 1994]; Bee Publs. v Cheektowaga Times, 107 AD2d 382, 385 [4th Dept 1985]). Significantly, it is not necessary that the general public understand the statement to concern the plaintiff, so long as those familiar with the plaintiff would reasonably understand the statement as referring to him or her (see Carlucci, 57 NY2d at 885; Gilman v Spitzer, 538 Fed Appx 45, 47 [2d Cir 2013]).
While application of the allegedly defamatory words to the plaintiff need only be stated generally (see CPLR 3016 [a]), courts may dismiss a complaint where, as a threshold matter of law, the statement cannot be reasonably understood as being “of and concerning” the plaintiff (see e.g. Springer, 60 NY2d at 917; Carlucci, 57 NY2d at 885). However, the question of whether a statement is “of and concerning” the plaintiff is generally one for the jury (see Harwood Pharmacal Co. v National Broadcasting Co., 9 NY2d 460, 462 [1961]; Gross, 270 NY at 96; Bee Publs., 107 AD2d at 385; Brady v Ottaway Newspapers, 84 AD2d 226, 231 [2d Dept 1981]; Grinaldo v Meusburger, 34 AD2d 586, 587 [3d Dept 1970], appeal dismissed 27 NY2d 598 [1970]; Geisler v Petrocelli, 616 F2d 636, 640 [2d Cir 1980]; 2A NY PJI2d 3:25 at 327 [2016]). Moreover, at the pleading stage, courts must accept the allegations of the complaint as true and, reading the complaint in conjunction with supplementing affidavits, a motion to dismiss must be denied “[i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation” (Silsdorf v Levine, 59 NY2d 8, 12 [1983], cert denied 464 US 831 [1983]; see Davis v Boeheim, 24 NY3d 262, 268 [2014]; Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976]).
*89 As reflected in the majority opinion of this Court, resolution of defendants’ motion to dismiss in the instant case depends upon whether defendants’ broadcast—and, in particular, defendants’ statement that the Cheetah Club was “run by the mafia”—can reasonably be understood as a statement “of and concerning” the three individual plaintiffs. According to the complaint and O’Neill’s affidavit, plaintiffs—although technically employees of other corporations—provided the Cheetah Club with management, promotional, talent, and booking services, and also handled the day-to-day operations of the club. O’Neill averred that plaintiffs comprised a “small and exclusive group of individuals who ‘run’ and manage” the club, were present at the club on a daily basis managing and operating its affairs, and were known by customers, vendors, entertainers, and city officials as the persons who “ran” the club. In other words, plaintiffs asserted that they were “the face of‘management’ of the Cheetah Club.” O’Neill also averred that, after defendants’ broadcast aired, she was contacted by numerous individuals who believed—as a result of the broadcast—that she was a member of the Mafia and involved in human trafficking.
In my opinion, assuming the truth of these allegations, defendants’ statement that Cheetah’s was “run by the mafia” could reasonably be interpreted by patrons, business associates, and other persons familiar with plaintiffs and their role at the Cheetah Club, as being “of and concerning” plaintiffs. Contrary to the view of the majority of this Court, I agree with the dissenting Justices of the Appellate Division that, viewing the broadcast in its entirety, an average listener—particularly someone familiar with plaintiffs and the establishment—could very reasonably understand the challenged statement to mean that plaintiffs—the individuals who managed the day-to-day operations of the establishment—were involved with a criminal organization. One need not “strain” to discern this interpretation (Cohn v National Broadcasting Co., 50 NY2d 885, 887 [1980], cert denied 449 US 1022 [1980]), which is at least as plausible as the one adopted by the majority here—namely, that defendants’ remark meant only that the club was “used by the Mafia to carry out a larger trafficking scheme” (majority op at 87). Given that the statement is susceptible to more than one reasonable interpretation, at least one of which implicates plaintiffs as members of the Mafia, its meaning should not be decided as a matter of law. Rather, it is the province of the jury *90 to determine whether the statement referred to plaintiffs (see Harwood, 9 NY2d at 462).
Defendants correctly point out that a statement is typically not found to be “of and concerning” an individual where the plaintiff is merely an employee of an establishment about which allegedly defamatory statements have been made (see Carlucci, 57 NY2d at 885; Afftrex, Ltd. v General Elec. Co., 161 AD2d 855, 856 [3d Dept 1990]; Cohn v National Broadcasting Co., 67 AD2d 140, 146 [1st Dept 1979], affd 50 NY2d 885 [1980]). However, the statement at issue here is not directed solely at the Cheetah Club as a corporate entity. The statement that Cheetah’s was “run by the mafia” could just as reasonably be interpreted as meaning that the individuals who ran the club were associated with the Mafia (see Harwood, 9 NY2d at 462). Furthermore, to the extent the majority relies on the fact that plaintiffs did not “own” Cheetah’s and were technically employed by other corporations, such facts are ir-revelant because knowledge of the corporate structure cannot be imputed, without any basis in the record, to the average patron or associate who observed or knew plaintiffs to seemingly be in control of, or running, the club.
Defendants’ argument that plaintiffs’ defamation cause of action fails because the statement does not refer to a sufficiently small or identifiable group is also unpersuasive. “[A] plaintiff’s claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff” (Diaz v NBC Universal, Inc., 337 Fed Appx 94, 96 [2d Cir 2009]; see Gross, 270 NY at 96; Abramson v Pataki, 278 F3d 93, 102 [2d Cir 2002]; Restatement [Second] of Torts § 564A [1977]). “The underlying premise of this principle is that the larger the collectivity named in the libel, the less likely it is that a reader would understand it to refer to a particular individual” (Brady, 84 AD2d at 228). However, where a group is sufficiently small, a defamation claim may be viable because “reference to the individual plaintiff reasonably follows from the statement and the question of reference is left for the jury” (Brady, 84 AD2d at 231; see Gross, 270 NY at 96).
Here, the “group” at issue is comprised of those individuals who “run” the Cheetah Club. According to plaintiffs’ allegations, there are only three individuals who managed or ran Cheetah’s and who would be identified by those familiar with *91 the club as the individuals who “run” the club. This is undoubtedly a sufficiently small group for a defamation claim to remain viable (see Gross, 270 NY at 95 [all but one of 12 radio editors in New York]; Brady, 84 AD2d at 238 [53 police officers sufficiently small size]; compare Diaz, 337 Fed Appx at 96 [group including several hundred individuals is too large to support a defamation claim]). Therefore, it “does not. . . appear that the publication was so scattered a generality or described so large a class . . . that no one could have been personally injured by it” (Gross, 270 NY at 96).
Accordingly, I would reverse the Appellate Division order insofar as it is appealed.
Judges Rivera, Abdus-Salaam, Fahey and Garcia concur; Judge Stein dissents in an opinion; Chief Judge DiFiore taking no part.
Order, insofar as appealed from, affirmed, with costs.